**Barretto Granite Corp., Petitioner, in the Name of the Vermont State Highway Commissioner v. State of Vermont, Blue Rock Industries, Inc. and St. Paul Fire & Marine Ins. Co.**

[513 A.2d 608]

No. 84-455

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed June 13, 1986

*Abare, Donaghy, Nicholls & Belcher*, Barre, for Plaintiff-Appellee.

*Lawrin P. Crispe*, Brattleboro and *Graydon G. Stevens* of *Kelly, Remmel & Zimmerman*, Portland, Maine, for Defendants-Appellants.

**Per Curiam.** Defendants, a general contractor and its surety, appeal a summary judgment by the Washington Superior Court in favor of claimant under the surety bond covering the contractor's performance on a State Transportation Department project. We affirm.

Defendant Blue Rock Industries, Inc. was the general contractor for part of a bridge construction project in Bennington County. Along with another general contractor, Blue Rock subcontracted portions of the project to Tucker Construction Corporation. Before starting the project, Blue Rock provided a labor and materials bond to the state pursuant to 19 V.S.A. § 4(a)(14). Defendant St. Paul Fire & Marine Insurance Co. was the surety on the bond.

Plaintiff Barretto Granite Corporation supplied granite curbstones to Tucker under its subcontract, but before plaintiff was paid, Tucker became insolvent and filed for bankruptcy. Unable to collect from Tucker, plaintiff sued Blue Rock and St. Paul on the surety bond. Defendants denied liability, inter alia, on grounds that 19 V.S.A. § 4(a)(14)[1] only requires payment "of all creditors *of such contractor*" (emphasis added), thus protecting all of the creditors of Blue Rock, but not those of its subcontractors. Plaintiff countered that despite the language of the Vermont statute, the language of the surety bond[2] issued pursuant to the

[1] Section 4(a)(14) states, in pertinent part, that
any contractor or contractors employed in any project of the board for constructive highway improvement [is required] to file an additional surety bond to the commissioner and his successor in office, for the benefit of labor, materialmen and others, executed by a surety company duly authorized to transact business in this state, in such sum as the board shall direct, conditioned for the payment, settlement, liquidation and discharge of the claims of all creditors of such contract . . . .

[2] The applicable portion of the contract bond executed by Blue Rock and St. Paul provides
NOW, THEREFORE, THE CONDITION OF THE ABOVE OBLIGATION IS SUCH that, if the above bounden, Principal shall pay, settle, liquidate and discharge the claims of all creditors [incurred] in carrying out the terms of said contract between said Principal and the State of Vermont . . . , this agreement to make such payment being in compliance with the requirements of 19 Vermont Statutes Annotated, Section 4(14), as

statute was broader, and required payment "of all creditors," including creditors of subcontractors. Relying on the primacy of the surety bond language over that of the statute, plaintiff moved for, and was granted, summary judgment. The trial court held not only that the bond language prevailed over the narrower language of the statute, but that the statute itself was broad enough to cover obligations incurred by subcontractors. This appeal followed.

Defendants' principal argument on appeal is that the intent of the surety bond was to provide protection only coextensive with that required by 19 V.S.A. § 4(a)(14). Defendants rely on *Town of Windsor* v. *Standard Accident Insurance Co.*, 112 Vt. 426, 26 A.2d 83 (1942), and contrast the holding in that case with the protection offered by an analogous federal law—the Miller Act, 40 U.S.C. §§ 270a-270d (1982 & Supp. 1984). Defendants contend that 19 V.S.A. § 4(a)(14) "appears to be a conscious adoption of *Windsor*'s narrow scope in preference to the Miller Act's broad coverage." The Vermont statute, however, was first adopted in 1939, see 1939 Vt. Acts 103, not 1947, as contended by defendants, thus predating *Windsor*. Even if we were to assume that the statute was a purposeful attempt to limit the coverage required by the Miller Act, the parties remain free to contract for greater coverage, and defendants do not explain why a bond whose plain meaning in fact denotes broader coverage should be read more narrowly. Defendants do not argue that the text of the bond does not cover subcontractors as a matter of simple construction. They argue rather that the parties "intended to assume only such obligations as were required by section 4(a)(14) and that the language of the bond was meant to incorporate these obligations."

One of the keynotes to contract construction is that when the language of an instrument is clear on its face—and defendants do not argue facial ambiguity—a court will not resort to examining claims of contrary intent. *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984); *Cross-Abbott Co.* v. *Howard's, Inc.*, 124 Vt. 439, 441, 207 A.2d 134, 137 (1965). Even if the language of the bond were to be deemed ambiguous, commercial surety contracts

amended, to furnish security thereunder, and being in fact such security, then this obligation shall be void; otherwise, to be and remain in full force and effect.

are to be construed "most strongly against the surety, and in favor of the indemnity which the obligee has reasonable ground to expect." *City of Montpelier* v. *National Surety Co.*, 97 Vt. 111, 117, 122 A. 484, 487 (1923); see also *Town of Troy* v. *American Fidelity Co.*, 120 Vt. 410, 417-18, 143 A.2d 469, 474 (1958) (bonds, like insurance contracts, are to be strictly construed against the surety). The trial court properly granted plaintiff's motion for summary judgment.

Having determined that the language of the surety bond applied to plaintiff's claim, we find no occasion to consider the question of whether 19 V.S.A. § 4(a)(14) would afford plaintiff relief apart from the language of this particular bond.

*Affirmed.*