**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL NO. 576, affiliated with the United Food and Commercial Workers Union International, Plaintiff,**

v.

**FOUR B CORP., Defendant.**

**Civ.A. No. 94–2277–KHV.**

United States District Court, D. Kansas.

July 19, 1995.

Thomas H. Marshall, Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, Mary E. Metz, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for plaintiff.

John D. Dunbar, Daniels & Kaplan, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Plaintiff's Motion for Summary Judgment* (Doc. # 10), filed November 16, 1994, *Defendant's Crossmotion [sic] for Summary Judgment* (Doc. # 16), filed December 29, 1994, and plaintiff's *Motion for Imposition of Costs and Attorneys Fees Against Defendant Four B. Corp.* (Doc. # 24), filed February 16, 1995. Plaintiff, United Food and Commercial Workers Union Local No. 576 ["the Union"],[1] seeks an order compelling arbitration of a labor dispute pursuant to Section 301 of the Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185. Defendant, Four B. Corp. ["Four B"],[2] a Kansas corporation which operates retail grocery facilities throughout the Kansas City metropolitan area known as either Ball's, Price Chopper or Hen House, claims that plaintiff's action is barred by the six-month statute of limitations in Section 10(b) of the National Labor Relations Act ("NLRB"), 29 U.S.C. § 160(b).

■■■ Rule 56(c) the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■■■ When deciding a summary judgment motion, the Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a

1. The Union is a labor organization in an industry affecting commerce within the meaning of Section 2(5) of the National Labor Relations Act ["NLRA"], as amended, 29 U.S.C. § 152(5).

2. Four B is an employer in an industry affecting commerce within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2).

genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The following facts are undisputed. The Union and Four B d/b/a Balls/Price Chopper are parties to a collective bargaining agreement, effective December 1, 1991, through December 1, 1994 ["the 1991 Agreement"].[3] The bargaining unit includes all meat department employees in "retail markets that are presently owned, leased, acquired, operated or supervised by the Employer during the period of [the] agreement." *Meat Cutter Contract*, Article III, § 3.1. Article X of the collective bargaining agreement provides a final and binding procedure for the resolution of grievances. In this regard, grievances are defined as "[a]ny disagreement or difference of opinion between the Company and the Union which concerns the interpretation or application of the terms and provisions of [the] contract." *Meat Cutter Contract*, Article 10, § 10.1. Under the Agreement, any grievance not presented within 15 days following the event giving rise to such grievance shall be forfeited and waived by the aggrieved party (except payroll errors). *Meat Cutter Contract*, Article X, § 10.3. If the parties do not reach an adjustment within 15 days thereafter, the agreement requires them to submit the grievance to arbitration. *Meat Cutter Contract*, § 10.5.

The 1991 Agreement contains a Hiring Hall Clause, which provides, in relevant part, as follows:

> In the interest of maintaining an efficient system in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of elimi-

nating discrimination in employment because of membership or non-membership in the Union, the parties agree to the following system of referral of applicants for employment:

> a) The Union shall be the sole and exclusive source of referrals of applicants for employment.
>
> b) The Employer shall have the right to reject any applicant for employment.
>
> \* \* \* \* \* \*
>
> f) In the event the Employer violates any provision of this section and is notified by the Union, and fails to correct said violation or violations within 48 hours after receipt of notice by registered or certified mail from the Union, the Union shall have the right to immediately subject said Employer to the termination of this Agreement, notwithstanding any provision of this contract to the contrary.

*Meat Cutter Contract*, Article II, § 2.1.

On or about September 4, 1989, Four B acquired certain assets of Hen House Markets, Inc., including the right to use the "Hen House Market" name to operate retail grocery stores at 8238 Wornall Road and 9550 Blue Ridge Boulevard in Kansas City, Missouri. Hen House has distinct customers and market areas and involves a different merchandising concept than Price Chopper. Hen House stores provide more services and conveniences to customers whereas Price Chopper stresses a warehouse store approach with fewer services and conveniences to customers.

At the time it acquired the Hen House assets, Four B d/b/a Balls/Price Chopper was party to a collective bargaining agreement with the Union, covering the period from December 1, 1988 through December 1, 1991 ["1988 Agreement"]. The 1988 Agreement covered the three year period immediately preceding the 1991 Agreement. The recognition language in each agreement is identical. In September 1989, the Union contacted Four B to determine the company's position

---

**3.** The 1991 Agreement is a contract within the meaning of § 301(a) of the LMRA, 29 U.S.C. § 185(a).

as to whether the meat cutters in the Hen House stores were part of the union contract. Four B informed the Union that based on the non-union history of Hen House stores and the absence of any knowledge that Hen House meat cutters had any interest in the union, its position was that Hen House stores were not covered by the 1988 Agreement. The Union did not challenge Four B's response by filing a grievance, an NLRB charge, or suit in federal court under Section 301 of the LMRA.

On July 9, 1990, the Union filed a grievance claiming that Four B had violated the 1988 Agreement by failing to utilize the hiring hall as a source of referral for applicants at the Four B "Hen House" store under construction at 87th and Lackman Road in Shawnee Mission, Kansas. Four B denied that the 1988 Agreement covered the Hen House store and the Union did not pursue its grievance any further.

In February, 1991, Four B acquired certain assets of Corinth Payless, Inc., including the right to operate a retail grocery store in the Corinth Shopping Center at 4050 West 83rd Street, Prairie Village, Kansas. Four B opened and continues to operate this facility as a Hen House market, maintaining that the collective bargaining agreement does not apply. The Union has not filed a grievance against Four B with respect to this location; however, the Union filed a grievance against Corinth Payless, Inc., contending that Corinth Payless had violated its collective bargaining agreement with the Union when it failed to require that Four B assume the agreement as a condition of sale. Following arbitration, the Union's grievance was denied. The Union did not file a grievance, an NLRB charge, or suit in federal court under Section 301 of the LMRA, to otherwise challenge Four B's position.

In February 1991, at the time it acquired the assets of Corinth Payless, Four B acquired certain assets of Camelot Court Pay-

less, Inc. located at 11751 Roe in Leawood, Kansas. Four B opened this facility as a "Price Chopper" store and, in doing so, recognized the Union as the representative of meat department employees at that location and applied the 1988 Agreement, and later, the 1991 Agreement. Four B operated the store at that location under the name "Price Chopper" until May 28, 1994, when it closed the "Price Chopper" facility for expansion and remodeling. During that time, Four B moved the exterior walls, increasing the space from 36,608 square feet to 51,608 square feet (more than 40%), and engaged in extensive remodeling. On June 26, 1994, Four B re-opened the store under the "Hen House" name.[4]

Before March 29, 1994, Four B notified the Union that the Roe facility was to be closed, extensively remodeled, and re-opened under the name "Hen House." Four B informed the Union that it had decided to transfer the meat department employees to other stores, rather than having them face a layoff, and that it did not know how or with whom the meat department of the remodeled store would be staffed upon its re-opening.[5] Four B denied the Union's demand for recognition as the bargaining representative of the meat department employees once the store was converted to a "Hen House" store, on the ground that it was not a subject covered by the 1991 Agreement. Four B maintained that the employees in the Hen House meat department should decide whether to be represented by the Union or any other union.

On March 29, 1994, the Union mailed its grievance to Four B stating, in relevant part, as follows:

> This is to notify you that a grievance is filed by the Local Union on behalf of meat department employees. It has been brought to our attention that the Price Chopper Store located at 11751 Roe, Leawood, Kansas, is being remodeled and name changed to a Hen House Store.

---

**4.** Four B has been the only owner and operator of the facility at 11751 Roe during the relevant time period.

**5.** Four B did in fact transfer the former meat cutters to bargaining unit meat departments in

other Price Chopper facilities at the close of business on May 28, 1994. None of the meat cutters working at the Price Chopper facility at 11751 Roe prior to May 29, 1994 are now working in the meat department of the Hen House facility at that location.

The meat department employees at that location have been told by the company that, in order for them to remain in a union shop, they would have to transfer from that store or they can stay at the Roe location and work non-union.

It is the union's position that the Roe location is covered by the union agreement now and after the remodel, and that this location is part of the Four B Corporation. Further, as per Article 1, the employer recognizes the union as the sole collective bargaining agency for all meat department employees coming under this agreement and working in the employer's retail stores in the Greater Kansas City Area.

By letter dated April 15, 1994, Four B, responded as follows:

The subject store will be closed for a period of time while it undergoes an extensive remodeling to convert it from a Price Chopper to a Hen House store. The remodeling and conversion will be extensive because Hen House has it own distinct customers and market areas and is a different operation which involves a completely different merchandising concept from Price Chopper. Also, as you know, the collective bargaining agreement does not cover Hen House stores.

Since the remodeling and conversion of the store requires that the store be closed, the company has decided to transfer the existing employees in the meat department to other stores rather than having them face a layoff. At the present time, we do not know how the meat department of the store will be staffed or with whom it will be staffed upon its reopening. Accordingly, due to these business decisions, it appears that any grievance which you attempted to file in your letter of March 29 is premature. Further, again based on these business decisions, your demand for recognition as the bargaining representative of the meat department employees once the store at 11751 Roe is remodeled, converted and becomes a Hen House, is denied since it is not a subject which is covered by the grievance and arbitration provisions of the collective bargaining agreement between the union and Ball's/ Price Chopper. It is the company's position that it is up to the employees in the meat department at the store to decide whether or not they want to be represented by your union or any union. Further, issues of representation, such as you have presented, should be decided by the National Labor Relations Board, not an arbitrator.

Based on the reasons listed above, the grievance presented in your letter of March 29, 1994 is denied both as premature and as presenting issues not covered by the collective bargaining agreement. Accordingly, the company declines to process the grievance further.

The parties discussed resort to arbitration, pursuant to the collective bargaining agreement. On or about June 7, 1994, however, Four B notified the Union that the Four B would not agree to arbitration. On July 11, 1994, the Union filed suit, seeking a court order compelling arbitration in accordance with Article X of the collective bargaining agreement, or in the alternative, granting equitable enforcement of the collective bargaining agreement and assessing damages for breach of Four B's contractual obligations.

Four B contends that the Union's action is barred by the six-month statute of limitations in Section 10(b) of the NLRA. Four B asserts that the time for the Union to seek arbitration of its grievance accrued in September 1989, when Four B first acquired Hen House stores and informed the Union that the 1988 Agreement did not cover employees at those stores. In the alternative, Four B maintains that the Union's grievance is not covered by the 1991 Agreement because the Union was notified on three previous occasions that the 1988 Agreement did not cover Hen House stores [6] and the Union

---

6. The three previous occasions were (1) when Four B notified the Union in September of 1989 that the 1988 Agreement did not apply to the newly-acquired Hen House stores; (2) when Four B rejected the Union's July 9, 1990 grievance that Four B had violated the 1988 Agreement by failing to utilize the hiring hall as a source of referral for job applicants at the Hen House store under construction at 87th and Lackman Road in Shawnee Mission, Kansas;

did not negotiate to include Hen House stores in the 1991 Agreement. Finally, Four B argues that under Section 2.1 of the 1991 Agreement, termination of the agreement was the Union's sole remedy for Four B's alleged failure to utilize hiring hall recommendations at the remodeled Roe facility.

 Arbitration is a matter of contract; a party cannot be required to submit to arbitration any dispute which it has not agreed to submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether a collective bargaining agreement creates a duty to arbitrate a particular grievance is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). In deciding whether a dispute is arbitrable, the Court may not rule on the potential merits of the underlying claim. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1419. As the Supreme Court stated in *United Steelworkers of America v. American Manufacturing Co.*:

> The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960) (footnote omitted).

 Where a collective bargaining agreement contains an arbitration clause, courts apply a presumption of arbitrability. *See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419. This presumption is particularly applicable where the arbitration clause is broad, as the one employed in this case, which provides for arbitration of "[a]ny disagreement or difference of opinion between the Company and the Union which concerns the interpretation or application of the terms and

provisions of [the] contract." *See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (applying presumption to similarly broad arbitration provision). The Court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1352–1353.

 Four B's arguments that the 1991 Agreement does not cover employees at the remodeled "Hen House" facility and that even if the agreement did apply, the Union's sole remedy is to terminate the agreement go directly to the interpretation and/or application of the terms or provisions of the 1991 Agreement. Four B points to no clear and unmistakable indication by the parties that the Union's grievance does not fall under the duty to arbitrate under the agreement. Thus, the Court cannot say with positive assurance that the arbitration clause may not be interpreted to cover the asserted dispute, and Four B should be compelled to arbitrate the Union's grievance.

The Union presents a more compelling case for arbitration than that asserted in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), wherein the Supreme Court found that the arbitration provisions of a collective bargaining agreement survived corporate merger and compelled a successor company to arbitrate under a pre-existing labor agreement. *Id.,* 376 U.S. at 548–551, 84 S.Ct. at 914–915. In ordering arbitration, the court found that relevant similarity and continuity of operation existed across the change in ownership, noting that in some cases a lack of substantial continuity of identity in the business enterprise before and after a change may make the duty to arbitrate not reasonably found in the particular bargaining agreement and the acts of the parties involved. *Id.,* 376 U.S. at 551, 84 S.Ct. at 915. Here, Four B remodeled and changed the name of a "Price Chopper" store which had been operating

and (3) when the Union unsuccessfully complained in February of 1991 that Corinth Payless, Inc., had violated its bargaining agreement with

the Union by not requiring that Four B assume its labor contract as a condition of sale.

under the 1991 Agreement and asserts that the 1991 Agreement no longer applies to the "Hen House" store operating at the same location. Although Four B asserts that "Hen House" is a completely different operation than "Price Chopper," enough similarity and continuity of operation exists to compel Four B to arbitrate under the 1991 Agreement, especially in light of the fact that Four B is the original party to that agreement. Like the situation in *John Wiley*, to allow Four B to automatically remove the duty to arbitrate by remodeling the store and changing the name would derogate from the federal policy of settling labor disputes by arbitration. *See John Wiley*, 376 U.S. at 549, 84 S.Ct. at 914.

▪ Four B's claim that the Union's action is barred by the statute of limitations is likewise without merit. Four B asserts that the time for the Union to seek arbitration of its grievance accrued in September 1989, when Four B acquired its first Hen House stores and maintained that the 1988 Agreement did not apply to those locations. The Union's grievance, however, is that the re-modeled and re-named Roe facility is covered by the 1991 Agreement, not that the 1991 Agreement applies to all Hen House stores. Certainly a distinction exists between acquiring additional "Hen House" stores and re-modeling an existing "Price Chopper" store operating under the 1991 Agreement and re-opening it under the "Hen House" name, claiming that the 1991 Agreement no longer applies. Thus, the Union's action for its grievance accrued on June 7, 1994, when Four B notified the Union that it would not arbitrate the grievance, and the Union's action is timely.

▪ Finally, to the extent that Four B argues that the Union has waived its claim, that issue should be decided by the arbitrator. *See, e.g., John Wiley*, 376 U.S. at 557, 84 S.Ct. at 918 ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Chicago Typographical Union No. 16 v. Chicago Sun–Times Inc.*, 860 F.2d 1420, 1424 (7th Cir.1988) (questions of procedural arbitrability such as standing, res judicata, and timeliness are issues for arbitrator to decide); *Local Union 370 v. Morrison–Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir.1986) (collateral estoppel and equitable estoppel are procedural issues for arbitrator).

▪ Plaintiff urges the Court to award costs and attorneys' fees, claiming that defendant has asserted frivolous positions, ignored legal precedent, and otherwise defended the action in bad faith. Rule 11 of the Federal Rules of Civil Procedure prohibits the filing of a motion for sanctions until after the motion has been served and the opposing party has had 21 days to correct the challenged action. Fed.R.Civ.Pro., Rule 11(c)(1)(A). Because plaintiff has not shown that it has complied with such procedure, plaintiff's motion for costs and attorneys' fees should be denied.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Summary Judgment* (Doc. # 10), filed November 16, 1994, should be and hereby is sustained, *Defendant's Crossmotion [sic] for Summary Judgment* (Doc. # 16), filed December 29, 1994, should be and hereby is overruled, and plaintiff's *Motion for Imposition of Costs and Attorneys Fees Against Defendant Four B. Corp.* (Doc. # 24), filed February 16, 1995, should be and hereby is overruled.