717 A.2d 362 (1998)
In re ESTATE OF Felicia SPINNER.
Old Republic Insurance Company, Appellant.
In re ESTATE OF Natasha HUTCHINS.
Old Republic Insurance Company, Appellant.
Nos. 96-PR-837, 96-PR-838.
District of Columbia Court of Appeals.
Argued November 4, 1997.
Decided September 17, 1998.
Wendy A. Hartmann, Baltimore, MD, for appellant.
Sam W. Burgan, for the Estate of Felicia Spinner.
Henry H. Brylawski, Washington, DC, for the Estate of Natasha Hutchins.
Before SCHWELB and RUIZ, Associate Judges, and KING, Associate Judge, Retired.[*]
RUIZ, Associate Judge:
We review two consolidated appeals in which Old Republic Insurance Company ("Old Republic") challenges the orders of the Probate Division of the Superior Court entering judgment against Old Republic in the amount of $15,321.35 in the case of In re Estate of Felicia Spinner (the "Spinner case"), and $1,000 in the case of In re Estate of Natasha Hutchins (the "Hutchins case"). Old Republic, which as surety issued a general personal representative bond in the amount of $1,000 in each of the two estates, argues 1) that it was error for the trial court to enter judgment against the surety because the statute of limitations to bring an action against the surety had expired; and 2) even if judgment was properly entered, the court erred in entering judgment in excess of the $1,000 bond issued by Old Republic in the Spinner case. We do not address the first issue because appellant did not preserve it for appeal by first raising it before the trial court. We agree, however, that the trial court erred in entering judgment against Old Republic in excess of the surety bond. Because *363 the trial court's subsequent amended order reducing the judgment to the bond amount was issued without jurisdiction as Old Republic had previously filed a notice of appeal with this court, we remand the judgment entered in the Spinner case to the Probate Division for reduction to the amount of the surety bond.

In re Estate of Felicia Spinner (No. 96-PR-837)
These two cases stem from an accident where three minor children died. The Spinner case commenced on February 3, 1986, with the filing of a petition for probate by John Spinner, father of one of the deceased minor children. The petition stated that decedent, infant Felicia Spinner, died at D.C. General Hospital on February 10, 1983, leaving no will or property other than a wrongful death action, and no debts other than funeral expenses unknown at the time of filing. Felicia Spinner was survived by her father, the petitioner, and her mother, Betty Hutchins. By order, the court appointed John Spinner as personal representative of the estate on February 4, 1986, after he had filed an undertaking in the sum of $1,000.[1]
When John Spinner failed to meet audit requirements regarding the third and final account, the court held a summary hearing on August 8, 1989. Thereafter, the court entered an order removing John Spinner as personal representative and appointing a successor personal representative.[2] Unfortunately, the successor personal representative passed away before completing his duty of filing an inventory and account, thus making it necessary for the court, on February 26, 1993, to order that the matter be referred to the Auditor-Master for stating an account on behalf of the deceased successor personal representative.[3]
After the Auditor-Master submitted her report to the probate court, Judge Long entered an order on May 15, 1996, granting judgment 1) in favor of the Auditor-Master for administrative costs and against John Spinner, removed personal representative, and Old Republic Surety Company, in the *364 amount of $50 and 2) in favor of Sam Burgan, successor personal representative and against the removed personal representative and Old Republic Surety Company in the amount of $15,271.35, the amount owed to the estate after adjusting the settlement proceeds for lost interest and litigation and other expenses.

In re Estate of Natasha Hutchins (No. 96-PR-838)
Similarly, the Hutchins case commenced on February 3, 1986, with the filing of a petition for probate by Joyce Hutchins, mother of the deceased minor child. The petition stated that decedent, infant Natasha Hutchins, died on February 19, 1983, leaving no will or property other than a wrongful death action, and no debts except for undetermined funeral costs. She was survived by her mother and her father, Wayne Robinson. The court appointed Joyce Hutchins as personal representative of the estate on February 4, 1986, after Joyce Hutchins had filed an undertaking in the penal sum of $1,000. On July 16, 1986, Joyce Hutchins filed her Inventory Report, reporting as the sole asset of the estate the wrongful death and survival action.
After a summary hearing held on April 13, 1990, regarding the personal representative's failure to state an account, Joyce Hutchins was removed as personal representative on April 30, 1990. On March 3, 1991, the trial court referred the matter to the Auditor-Master to conduct a first and final accounting. After the Auditor-Master filed her report on September 6, 1995,[4] the trial court held a hearing to consider Joyce Hutchins' motion to amend the Report of the Auditor-Master. On May 13, 1996, the court entered an order against Joyce Hutchins and Old Republic and in favor of the Auditor-Master in the amount of $50 for administrative fees; and against Joyce Hutchins and Old Republic and in favor of Henry H. Brylawski, successor personal representative, in the amount of $950.

I. Expiration of the Statute of Limitations
Old Republic argues that it was improper for the Auditor-Master to propose judgment against the surety on these general personal representative bonds, and for the court to enter the judgments, because the applicable five-year statute of limitations had lapsed. Old Republic relies on D.C.Code § 12-301(6) as setting out the time frame within which an action on an executor's or administrator's bond must be brought.[5] Old Republic argues that in a claim against a bond, the cause of action accrues when a breach of the bonded obligation occurs, contending that in this case the cause of action accrued when a claim could be made against the bond, which is when an interested person was injured or damaged by some action of the personal representative. Applying these concepts, Old Republic argues, injury occurred and the claim accrued in July 1988, when the settlement funds were received by the personal representatives of both estates, without fully accounting for them. Thus, the five-year statute of limitations had expired by the time the court entered judgment against the surety on May 13, 1996.
Appellees, the respective estates, propose that the time when the action accrues against the surety is when the court makes a final decision establishing wrongdoing on the part of the personal representative. Specifically, 1) the determination that an interested party has been damaged by the personal representative's failure to properly distribute funds received was not made in this case until the Auditor-Master's report was approved by the court on May 13, 1996; and 2) the removal of the personal representatives because of their failure to meet the Probate Division's accounting form requirements, without more, *365 did not trigger the statute of limitations because no financial liability had yet been established.
We need not decide what statute of limitations applies or when it starts to run against a surety for a general personal representative bond, because we conclude that Old Republic waived the statute of limitations defense by failing to object to the Auditor-Master's Report assessing liability or raising the issue in any way before the Probate Division.
The surety company argues that although it did receive a copy of the Auditor-Master's Report containing a recommendation that the court enter judgment against the surety company, Old Republic was not a party before the court and, as such, had no obligation to object to the Report nor the court order. To the contrary, the surety company was an interested party before the court for the purpose of having an obligation to raise the statute of limitations defense before the Probate Division. Super.Ct.Civ.R. 65.1 provides the Superior Court with personal jurisdiction over a surety that has given security in the form of a bond, stating:
Whenever these Rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with 1 or more sureties, each surety submits to the jurisdiction of the Court and irrevocably appoints the Clerk of the Court as the surety's agent upon whom any papers affecting the surety's liability on the bond or undertaking may be served. The surety's liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the Court prescribes may be served on the Clerk of the Court, who shall forthwith mail copies to the sureties if their addresses are known.
Super.Ct.Civ.R. 65.1 (emphasis added). Furthermore, D.C.Code § 20-523(b) (1997) notes that
Termination [of the personal representative] does not affect the personal jurisdiction consented to pursuant to section 20-501 in proceedings which may be commenced against such representative arising out of the performance of duties as personal representative. If the personal representative fails to account for and deliver the property belonging to the estate to the successor personal representative or special administrator, as required by subsection (a), the Court may enter judgment against the personal representative and the personal representative's surety.

(Emphasis added.) These provisions, coupled with the fact that Old Republic had notice of the Auditor-Master's Report,[6] made the surety an interested party before the Probate Division, triggering the surety's obligation to timely bring a statute of limitations defense. The Report of the Auditor-Master contained the following "Notice" informing interested parties that
If within thirteen days after the mailing of notice of the filing of this Report, no objections are filed hereto, this Report will be presented to the Fiduciary Judge for an Order approving this Report and recommendations. (Rule 53(e)(2); Rule 6 and Rule 12-I; Civil Rules of the Superior Court of the District of Columbia).
A number of months elapsed between the mailing of the Report of the Auditor-Master and the Probate Division's order entering judgment against Old Republic in the two cases, based on the Auditor-Master's recommendation. In the Spinner case, the Auditor-Master filed her Report with the Register of Wills, Clerk of the Probate Division, on September 1, 1995. The order of the Probate Division adopting the Report's recommendations was not entered until May 13, 1996. Similarly, in the Hutchins case, the Auditor-Master filed her Report with the Probate Division on September 6, 1995, and the court did not enter judgment based on those recommendations until May 13, 1996. In both instances, the surety company had ample time to respond to the Report of the Auditor-Master and raise any objections to its recommendations, in particular the recommendation *366 that the court enter judgment against the surety.
Because Old Republic failed to file an objection to the Report of the Auditor-Master, or otherwise to bring before the Probate Division, its affirmative defense that the statute of limitations had expired, it is barred from raising the issue on appeal. See, e.g., Mayo v. Mayo, 508 A.2d 114, 116 (D.C.1986) ("A statute of limitation defense, once waived. . . may not be raised by a collateral attack upon an adverse judgment or for the first time on appeal.").

II. Judgment in Excess of the Penal Sum of the Bond
Old Republic argues that even if judgment against it was proper, the court erred in entering judgment in the Spinner case in an amount that exceeded the amount of the bond. Appellee, the Estate of Felicia Spinner, agrees with Old Republic that the amount of the judgment against the surety company may not exceed the amount of the penal sum of the bond of $1,000.
The law is established that the liability of a surety cannot be extended beyond the terms of the surety contract. See Miller v. Stewart, 22 U.S. (9 Wheat.) 680, 702-03, 6 L.Ed. 189 (1824) ("Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no farther."); see also Bevard v. New Amsterdam Cas. Co., 132 A.2d 157, 159 (D.C.1957) (noting that "[a] surety's obligation must be measured by the condition stated in the bond, . . . [and] such condition cannot be construed to go further than its terms and give rights to others not mentioned either expressly or by intendment".)
In the Spinner case, although the face of the bond limited Old Republic's liability to $1,000, the court entered judgment on May 13, 1996, against the surety in the amount of $15,271.35. After Old Republic filed a notice of appeal on June 21, 1996, challenging the court's May 13, 1996 judgment in excess of the bond amount, the Probate Division judge filed a subsequent order on June 25, 1996, sua sponte amending its earlier order to reduce the judgment against Old Republic to the face amount of the bond, $1,000. However, the trial court was without jurisdiction to amend its May 13, 1996 judgment at the time it did so because Old Republic had previously filed its notice of appeal from that judgment. See Stebbins v. Stebbins, 673 A.2d 184, 190 (D.C.1996) ("It is clear, for example, that `a party may seek disposition in the trial court of other matters which do not result in revocation or alteration of the judgment on appeal.'") (quoting Padgett v. Padgett, 478 A.2d 1098, 1100 (D.C.1984) (per curiam) (emphasis in original)).
Accordingly, we remand for the trial court to re-enter its amended order limiting the amount of the judgment against Old Republic in the Spinner case to $1,000.
The judgment in case No. 96-PR-838 is affirmed, and the judgment in case No. 96-PR-837 is affirmed in part and remanded for further action comporting with this opinion.
So ordered.
NOTES
[*] Judge King was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1998.
[1] As a condition of appointment, a personal representative must file any required bond. See D.C.Code § 20-501 (1997). Furthermore, D.C.Code § 20-502 requires that "[u]nless excused from giving bond by the decedent's will or written waiver of all interested persons, each personal representative shall execute a bond to the District of Columbia for the benefit of interested persons and creditors with a surety or sureties approved by the Court." D.C.Code § 20-502 (1973). A general bond covers all of the estate's assets except real estate. If the debts of the estate exceed the value of the personal estate, the bond will be set in the amount of the value of the personal estate with a requirement that the penalty for the bond must be increased before the personal representative receives tangible or intangible personal property in excess of the stated amount of the bond. The court, at its discretion, can increase or decrease the bond with good cause. NICHOLAS B. WARD, ET AL., WILLS, TRUSTS & ESTATES §§ 12-3112-32 (2d ed. Repl. 1993).
[2] Rule 121 of the Superior Court Probate Division establishes a procedure whereby a personal representative who fails to file, within the prescribed time, a proper inventory or account, is subject to removal. If after notification by the Register of Wills, any irregularity is not remedied, the court must set a summary hearing "and, at the hearing, remove the person and appoint a successor. . . ." Super.Ct.Prob.R. 121.

A family member and heir, appointed as a personal representative, has a fiduciary duty to the estate and to other interested parties such as other beneficiaries and auditors. The fact that the personal representative is also a beneficiary of the estate does not excuse him or her from filing all of the required inventories and accounts unless all heirs and legatees agree in writing. See D.C.Code § 20-731(a) (1997) (stating the procedure for waiver of filing of inventories and accounts where each heir or legatee signs a written waiver filed with the Register). Failure to render an account is grounds for removal. See D.C.Code § 20-725 (1997).
[3] The Auditor-Master found that John Spinner, as personal representative of the Estate of Felicia Spinner, and Joyce Hutchins, as personal representative of the Estate of Natasha Hutchins, settled the estates' wrongful death claims for the gross sum of $120,000, to be divided equally among the three estates involved in the wrongful death suit. After payment of attorney's fees and litigation expenses pursuant to a retainer agreement, each of the estates received $20,435.14, which was distributed to John Spinner and Joyce Hutchins in their capacities as personal representatives of their respective estates. Neither personal representative provided an accounting documenting receipt of these funds on behalf of the estate, nor did they increase the amount of the bond before receiving any funds in excess of $1,000, as required by the order of the Probate Division appointing each personal representative. See D.C.Code § 20-502 (1997).
[4] See note 3, supra.
[5] D.C.Code § 12-301(6) (1995) states:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
. . .
(6) on an executor's or administrator's bond 5 years; on any other bond or single bill, covenant, or other instrument under seal12 years; . . . .
[6] The record reflects that the Auditor-Master's Report for each case was mailed to Old Republic Insurance Company at its business address. Furthermore, at oral argument, Old Republic's attorney acknowledged actual receipt of the Report.