GOLDBERG. MARCHESANO. KOHLMAN. INC., Appellant/Cross–Appellee,

v.

OLD REPUBLIC SURETY COMPANY, Appellee.

Joan Bingham, Appellant,

v.

Goldberg. Marchesano. Kohlman, Inc., Appellee/Cross–Appellant.

Nos. 97–CV–954, 97–CV–1052.

District of Columbia Court of Appeals.

Argued Nov. 10, 1998.
Decided March 25, 1999.

Diana M. Savit and Marvin L. Szymkowicz, Washington, DC, for appellant/cross-appellee Goldberg.

Richard A. Gross, with whom Michael D. Gaffney, Washington, DC, was on the brief, for appellant Bingham.

Robert F. Carney, Baltimore, MD, for appellee Old Republic Surety Company.

Before TERRY and RUIZ, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

This case arises from a breach of contract action that was decided by this court in *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81 (D.C.1994). After our decision, appellant Goldberg. Marchesano. Kohlman. Inc. ("GMK") attempted to collect payment from a supersedeas bond issued by appellee Old Republic Surety Company ("Old

Republic"). This attempt was thwarted when a motion for summary judgment was granted in favor of Old Republic. GMK now appeals. In a related matter, Joan Bingham appeals from a denial of sanctions under Super. Ct. Civ. R. 11 against GMK. We affirm both the summary judgment and the denial of Rule 11 sanctions.

## I.

In 1984, GMK filed a breach of contract action against PFP, Inc. ("PFP") and its president, Joan Bingham. On July 29, 1989, Superior Court Judge Harriett Taylor entered a judgment in which both Ms. Bingham and PFP were found jointly and severally liable. Ms. Bingham and PFP filed an appeal, and sought a stay of the judgment pending appeal pursuant to Super. Ct. Civ. R. 62(d). Ms. Bingham obtained a supersedeas bond from Old Republic to secure the judgment against her, but that bond did not mention PFP. Nonetheless, the bond was submitted with a motion for stay pending appeal joined by both Ms. Bingham and PFP. When the supersedeas bond was presented to the trial court and GMK, GMK objected to the amount of the bond. GMK, however, never raised an objection to the fact that the bond was only issued to Ms. Bingham as principal.

In 1994, this court affirmed the judgment against PFP, but reversed the judgment against Ms. Bingham. *Bingham, supra,* 637 A.2d at 95. PFP has since become defunct. GMK filed a motion to compel Old Republic to satisfy the judgment, claiming the bond covered the liability of both Ms. Bingham and PFP. A new judge, Judge Geoffrey Alprin, was assigned the case. Judge Alprin initially denied the motion, but later vacated his order when it was brought to his attention that not all parties had filed their briefs relating to the motion.

GMK then withdrew the motion and filed suit against Old Republic on November 21, 1995. The case was assigned to a third judge, Judge Michael Rankin. GMK asserted: (1) the supersedeas bond covered both Ms. Bingham and PFP by its own terms; (2) the fact that Judge Taylor accepted the bond as security for the judgment obligated Old Republic to satisfy the judgment against PFP; and (3) Old Republic should be estopped from claiming the bond did not cover PFP. Old Republic filed a third party complaint against Ms. Bingham seeking indemnification for attorney's fees. Ms. Bingham's counsel sent a letter to GMK's counsel, stating that Ms. Bingham intended to hold GMK liable for any attorney's fees caused by GMK's lawsuit.

GMK and Old Republic filed cross-motions for summary judgment. Judge Rankin granted Old Republic's motion for summary judgment, adopting the order Judge Alprin had vacated. Six weeks after summary judgment had been granted, Ms. Bingham filed a motion for Rule 11 sanctions. The request was denied.

GMK appeals from the summary judgment, claiming: (1) the supersedeas bond covered the liability of PFP; and (2) under the doctrine of equitable estoppel, Old Republic should be estopped from asserting the bond did not cover PFP's liability. Ms. Bingham appeals from the denial of Rule 11 sanctions, claiming an abuse of discretion. We disagree with both GMK and Ms. Bingham, and affirm.

## II.

Summary judgment should only be granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *Kurth v. Dobricky,* 487 A.2d 220, 224 (D.C.1985). GMK first claims the language of the surety bond was broad enough to cover the liability of both Ms. Bingham and PFP. In support of this claim, GMK asserts the language of the bond should be read in light of the trial court's order. We disagree.

A surety bond is a contract whereby one party, the surety, agrees to answer for the debts of another, the principal. 74 AM.JUR.2D *Suretyship* § 3 (1974). When a party appeals from a judgment of the Superior Court, that party may obtain a stay of the judgment providing the party submits a bond approved by the court. Super. Ct. Civ. R. 62(d). Under the law of the District of Co-

lumbia, "[a] surety's obligation must be measured by the conditions stated in the bond . . . ." *Bevard v. New Amsterdam Casualty Co.*, 132 A.2d 157, 159 (D.C.1957); *see also In re Estate of Spinner,* 717 A.2d 362, 366 (1998).[1]

■ In this instance, the language of the contract clearly identifies Joan Bingham as the party whose liability is secured by the bond. PFP is not mentioned anywhere on the bond. While Ms. Bingham was PFP's president and in that capacity could act for the corporation, *see* D.C.Code § 29–343(b) (1997), the fact that PFP was not mentioned on the face of the bond and that Bingham did not purport to sign in her capacity as president of PFP means that PFP was not a party to the surety contract. Therefore, the language of the bond is unambiguous in that only the liability of Joan Bingham was covered.

■ GMK argues that because Judge Taylor accepted the supersedeas bond, and stayed the proceeding as to both Ms. Bingham and PFP, the bond necessarily covers both parties. In essence, GMK claims that a supersedeas bond is a prerequisite to granting a stay. This is an erroneous reading of Super. Ct. Civ. R. 62(d). The rule states:

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order

allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Super. Ct. Civ. R. 62(d). This rule is identical to the Federal rule. Therefore, we will use federal case law to guide our decision. *See In re Mendes,* 598 A.2d 168, 169 (D.C. 1991).

■ When an appellant submits a bond that is approved by the court, the appellant is entitled to a stay as a matter of right. *Pierola v. Moschonas,* 687 A.2d 942, 945 n. 2 (D.C.1997). *See also Federal Prescription Serv., Inc. v. American Pharmaceutical Ass'n,* 205 U.S.App. D.C. 47, 51–52, 636 F.2d 755, 759–60 (1980). That is not to say that a bond is required in order to obtain a stay. *See id.* It is within the discretion of the judge to issue a stay without requiring a bond. *See, e.g., United States v. Certain Real and Personal Property Belonging to Hayes,* 943 F.2d 1292, 1296 (11th Cir.1991); *Miami Intern. Realty Co. v. Paynter,* 807 F.2d 871, 873 (10th Cir.1986); *Lightfoot v. Walker,* 797 F.2d 505, *reh'g denied,* 826 F.2d 615 (7th Cir.1987); *Olympia Equip. Leasing Co. v. Western Union Telegraph,* 786 F.2d 794, 796 (7th Cir.1986); *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 757 F.Supp. 1101, 1104 (S.D.Cal.1990); *Grand Union Co. v. Food Employers Labor Relations Ass'n,* 637 F.Supp. 356, 357 (D.D.C.1986). Thus, the mere fact that a stay was issued does not mean that the supersedeas bond covers both Ms. Bingham and PFP, where the bond does not mention PFP as the principal.[2]

---

**1.** There is a rule of construction which holds that when the language of the contract is ambiguous and the surety is a company, the surety bond should be construed liberally in favor of the beneficiary. *See, e.g., School Dist. 65R of Lincoln County v. Universal Surety Co.,* 178 Neb. 746, 135 N.W.2d 232, 234 (1965); *Acoustics, Inc. v. American Surety Co. of New York,* 74 Nev. 6, 320 P.2d 626, 628 (1958); *Poole v. Great American Ins. Co.,* 407 Pa. 652, 182 A.2d 509, 510–11 (1962); *Barretto Granite Corp. v. State,* 147 Vt. 148, 513 A.2d 608, 610 (1986); *Century Indemnity Co. v. Esso Standard Oil,* 195 Va. 502, 79 S.E.2d 625, 630 (1954); *Elkins Manor Assoc. v. Eleanor Concrete Works, Inc.,* 183 W.Va. 501, 396 S.E.2d 463, 470 (1990). This rule, however, does not override unambiguous contractual language:

> The rule that the obligation is to be construed against the surety and in favor of the beneficiaries of the bond is one of construction only. In

the absence of ambiguity it should not be invoked to circumvent the plain language of the contracting parties.

*United States Plywood Corp. v. Continental Casualty Co.,* 157 A.2d 286, 288 (D.C.1960).

**2.** While granting a stay without a supersedeas bond is within the discretion of the judge, the exercise of such discretion requires an adequate factual basis. *Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979). Generally, federal courts will not issue a stay without a supersedeas bond unless the defendant's ability to pay the judgment is clear, *Olympia Equip., supra,* 786 F.2d at 796; *Federal Prescription Serv., supra,* 205 U.S.App. D.C. at 53, 636 F.2d at 761, or requiring the bond would render the defendant insolvent or place the defendant's creditors in jeopardy, *Miami Intern. Realty, supra,* 807 F.2d at 874; *Olympia Equip., supra,* 786 F.2d at 796. The burden

### III.

GMK next claims Old Republic should be estopped from claiming the bond does not cover PFP's liability. To prevail on a claim of equitable estoppel, the plaintiff must carry its burden of proof on all of the elements of the claim, which are:

> (1) conduct amounting to a false representation or concealment of material fact (2) made with actual or constructive knowledge of the true facts, and (3) with the intention that another person act in reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge concerning the truth of the representation, (5) and his reliance upon the misrepresentation, (6) causing him to act so as to change his position prejudicially.

*Cassidy v. Owen*, 533 A.2d 253, 255 (D.C. 1987) (citations omitted).

In this instance, there is an argument that counsel for Ms. Bingham and PFP may have misrepresented the coverage of the bond. It is suggested that counsel represented that both Ms. Bingham and PFP desired the stay, and claimed the bond was "sufficient to cover the whole amount of the judgment remaining unsatisfied." This leads to speculation that counsel for Ms. Bingham and PFP may have attempted to slip the supersedeas bond by the trial court, knowing the bond covered only Ms. Bingham's liability but implying that the bond covered PFP's liability as well.

■ If a misrepresentation occurred (a question we do not decide), it was through the conduct of Ms. Bingham's counsel, not Old Republic. We are reluctant to hold Old Republic liable for alleged misrepresentations concerning the coverage of the bond, when Old Republic itself did not appear to make those representations, nor consent to those representations.

GMK cites a Maryland case, *Travelers Indemnity Co. v. Nationwide Constr. Co.*, 244 Md. 401, 224 A.2d 285, 291 (1966), to support its contention that a surety is bound by the conduct of its principal, even when the surety has not consented to that conduct. In that case, it was held that the surety could not assert a jurisdictional defense once the principal was estopped from asserting it. *Id.* at 294. To support its holding, the Maryland Court of Appeals cited *Sargeant v. Starr*, 102 Ga.App. 453, 116 S.E.2d 633, 637 (1960). In *Sargeant*, the Georgia Court of Appeals held that a surety was bound by a judgment entered against the principal through a settlement, even when the surety had not consented to that settlement. *Id.*

Neither *Travelers Indemnity* nor *Sargeant*, therefore, stands for the proposition that a surety is bound by a misrepresentation made by its principal when the surety neither consented to, nor had any part in, making the misrepresentation. Rather, both cases stand for the unremarkable proposition that a surety is bound by a tactical decision made by the principal in the conduct of litigation that results in an unfavorable judgment against the principal. Similarly, under the law of the District of Columbia, a surety becomes an interested party in the litigation, and has a duty to raise timely legal issues, or thereby lose the ability to raise them on appeal. *See Spinner, supra*, 717 A.2d at 365–66.

■ It is clear that GMK had the means to ascertain the truth of any alleged misrepresentation.[3] The supersedeas bond was served on GMK, attached to the motion for stay pending appeal, on August 28, 1989. Thus, GMK could read the text of the bond and see for itself that Ms. Bingham was mentioned as the sole principal.

From Judge Taylor's order of September 19, 1989, it is apparent that GMK read over the language of the bond carefully. GMK raised objections to the amount of the bond.

---

is on the moving party to show a reason for the departure from requiring the bond. *Grand Union, supra*, 637 F.Supp. at 357. While it may have been an abuse of discretion to issue the stay without having PFP post its own supersedeas bond, that issue was not raised by GMK at the appropriate time in 1989 when the stay was granted.

3. Because GMK had the ability to know the facts, we do not need to decide whether the alleged acts of Ms. Bingham's counsel constituted a misrepresentation sufficient to bind Old Republic for estoppel purposes.

In response, Judge Taylor awarded GMK additional costs, and accepted the bond. GMK, therefore, did not raise the issue of whether PFP was covered by the bond when GMK had "the means of knowledge concerning the truth of the representation." *Cassidy, supra*, 533 A.2d at 255.

## IV.

Ms. Bingham claims Judge Rankin should have granted her request for Rule 11 sanctions. We disagree.

Under Rule 11, a party may seek sanctions against an opposing party that has filed a frivolous argument or claim by filing a motion for sanctions. Super. Ct. Civ. R. 11(c). Rule 11 sets forth a "safe harbor" provision, however, to allow the opposing party the opportunity to correct its behavior:

> [The Rule 11 motion] shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other days as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Super. Ct. Civ. R. 11(c)(1)(A). Superior Court Rule 11 is identical to Rule 11 of the Federal Rules of Civil Procedure. Therefore, we will use federal case law regarding Rule 11's "safe harbor" to guide our decision. *See Mendes, supra*, 598 A.2d at 169.

 The moving party must show that it complied with the "safe harbor" provisions before the court will award sanctions. *United Food & Commercial Workers Union Local 576 v. Four B Corp.*, 893 F.Supp. 980, 987 (D.Kan.1995). Where the moving party has not served the motion on the opposing party prior to filing the motion with the court, Rule 11 sanctions have been denied. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.

1995). "The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory." *Id.*

 Where a party sent a letter requesting the opposing party to withdraw its claim voluntarily, Rule 11 sanctions were denied for failure to comply with the "safe harbor" provision. *United States v. BCCI Holdings*, 176 F.R.D. 1, 2 (D.D.C.1997). "The 'safe harbor' provision of Rule 11 clearly requires service of the motion for sanction pursuant to Rule 5 as a 'warning shot' prior to the filing of such a motion." *Id.*[4]

The United States District Court in *Progress Federal Savings Bank v. Lenders Ass'n, Inc.*, No. 94–7425, 1996 WL 57942, 1996 U.S. Dist. LEXIS 1422 (E.D.Pa. Feb. 12, 1996), faced a factual situation similar to the one before this court. There, a party gave various informal warnings of the alleged frivolousness of the lawsuit. *Id.* at \*3, 1996 U.S. Dist. LEXIS 1422 at \*8. These warnings were given more than 21 days before the filing of a Rule 11 motion. *Id.* at \*3, 1996 U.S. Dist. LEXIS 1422 at \*9. The Rule 11 motion, however, was not filed until after all claims had been dismissed. *Id.* The court found "[t]his timing [was] antithetical to the purpose of the twenty-one day 'safe harbor' period." *Id.* Specifically, when the motion was filed, there was nothing before the court to withdraw. *Id.* Stating that Rule 11 motions should be filed as soon as the objectionable behavior is discovered, the court denied the request for sanctions for failing to comply with the 'safe harbor' provision. *Id.* at \*3, 1996 U.S. Dist. LEXIS 1422 at \*10 (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir.1988)).

Ms. Bingham points to a recent case, *Divane v. Krull Electric Co.*, No. 95 C 6108, 1998 WL 150726, 1998 U.S. Dist. LEXIS

---

4. After finding the government had not complied with the "safe harbor" provisions by failing to serve the Rule 11 motion, the court in *BCCI* commented on the sufficiency of the government's letter:

> Had the government's letter indicated an intention to file a motion for sanctions should the petitioner, through counsel, persist in maintaining their ... petition, this court *might* have construed such a letter as a functional

equivalent of the notice requirement of the "safe harbor" provision.

176 F.R.D. at 2 (emphasis added). Given the tentative nature of this quotation, we are reluctant to ascribe to the United States District Court a holding that an informal letter can serve as the functional equivalent to the service of a Rule 11 motion. Such a holding would be contrary to the intended procedure of the 1993 amendments as discussed *infra*.

4002 (N.D.Ill. March 27, 1998), to support her claim that formal service prior to filing a Rule 11 motion is not always necessary. There, the prevailing party filed a motion for sanctions after a judgment had been rendered. The court stated that "[n]o paper, claim, defense, contention, allegation or denial remained which the defendant could withdraw or correct." *Id.* at *4, 1998 U.S. Dist. LEXIS 4002 at *11. Therefore, service of the motion to the opposing party prior to filing it with the court was not required. *Id.*

We find the reasoning of *Divane* unpersuasive, and contrary to the policy behind the current version of Rule 11. *Divane* runs directly counter to the Advisory Committee Note to the 1993 Amendments. Specifically, "[g]iven the 'safe harbor' provisions ... a party cannot delay serving its Rule 11 motion until after the conclusion of the case (or judicial rejection of the offending contention)." FED. R. CIV. P. 11 advisory committee note. The very purpose of the 'safe harbor' provision is to give an opposing party the opportunity to admit candidly that it cannot support its contention, and withdraw that position before the Rule 11 motion has been filed with the court. *See id.* Because such an opportunity was not given in *Divane*, we decline to follow that court's reasoning.

Requiring formal service of the motion for sanctions follows not only the language of the rule itself, but the intended practice as envisioned by the advisory committee. The advisory committee anticipated that a party moving for sanctions would not only give the opposing party formal notice through service of the motion, but also informal notice before serving the motion. "In most cases ... counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation *before proceeding to prepare and serve a Rule 11 motion.*" *Id.* (emphasis added).

■ Therefore, we hold that pursuant to Rule 11 the motion for sanctions must be served on the opposing party while the opposing party still has the opportunity to correct the offending position or papers. Further, a letter informing opposing counsel of an intention to pursue sanctions is not the functional equivalent of actual service of the Rule 11 motion. Pursuant to the language of the rule as well as the advisory committee note, formal service of the actual Rule 11 motion must be made at least twenty-one days prior to filing the motion with the court. Super. Ct. Civ. R. 11(c)(1)(A).

■ Ms. Bingham's motion for sanctions must fail, both because it was untimely, and because there was no formal service of the motion to opposing counsel. First, Ms. Bingham filed her Rule 11 motion six weeks after Judge Rankin rendered summary judgment. At that time, there were no papers, claims, or contentions pending before the judge which GMK could have withdrawn or corrected in response to the motion. Second, Ms. Bingham failed to serve her Rule 11 motion on opposing counsel twenty-one days prior to filing it with the court. The letter upon which Ms. Bingham relies, while strongly worded,[5] fails to mention Rule 11 sanctions specifically. Further, this is the very type of informal notice the advisory committee envisioned as preceding service of a formal Rule 11 motion. FED. R. CIV. P. 11 advisory committee note. Therefore, the letter did not relieve Ms. Bingham of the requirement of serving the actual Rule 11 motion on opposing counsel twenty-one days prior to filing the motion with the court.[6]

For the foregoing reasons, both the summary judgment and the denial of Rule 11 sanctions are

*Affirmed.*

---

**5.** The letter states:
 Please be on notice that, due to the groundless nature of GMK's claims, Bingham intends to hold GMK and its attorneys responsible to the full extent of the law for any and all fees, costs and expenses incurred in defending against the Third–Party Complaint.

**6.** Because we decide against Ms. Bingham on her failure to serve GMK her Rule 11 motion in a timely fashion, we decline to discuss the merits of her contention that the conduct of GMK's counsel justified sanctions.