**BROOKTREE
CORPORATION, Plaintiff,**

v.

**ADVANCED MICRO DEVICES,
INC., Defendant.**

**Civ. No. 88–1750–E (CM).**

United States District Court,
S.D. California.

Dec. 21, 1990.

David E. Monahan and John Allcock, Gray, Cary, Ames & Frye, San Diego, Cal.,

Ellsworth Roston, Los Angeles, Cal., for plaintiff Brooktree Corp.

Alexander L. Brainerd, Kenneth E. Keller, Keith R. Weed, David Eiseman, Bronson, Bronson & McKinnon, Martin C. Fliesler, Mark A. Haynes, Mark E. Miller, Fliesler, Dubb, Meyer & Lovejoy, San Francisco, Cal., Philip David Kopp, Christopher J. Healey, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant Advanced Micro Devices, Inc.

MEMORANDUM DECISION
AND ORDER

ENRIGHT, District Judge.

INTRODUCTION

Brooktree is a California corporation in the business of designing, manufacturing, and selling semiconductor chip products used in computer graphic displays. AMD is a competitor and is one of the five largest manufacturers of chip products in the United States, with sales almost 30 times that of Brooktree.

This action was originally brought by Brooktree Corporation (Brooktree) against Advanced Micro Devices, Inc. (AMD) for mask work infringement. A bifurcated jury trial began on August 7, 1990, and ended on October 1, 1990. The jury found AMD liable on all but one of the patent claims, on all of the mask work claims, and found that AMD's infringement of Brooktree's patents had been willful. The jury awarded damages of over $25 million. On November 19, 1990, this court held a hearing on AMD's motions for JNOV or, in the alternative, for a new trial, and Brooktree's motions for enhanced damages, attorneys' fees and prejudgment interest. In a memorandum decision dated December 10, 1990, this court denied AMD's motions for JNOV or a new trial, and also denied Brooktree's motions for enhanced damages and attorneys' fees. Brooktree's motion for an award of prejudgment interest on its patent claims was conditionally granted, the condition being that Brooktree supply additional figures clearly segregating the amounts awarded for the patent infringement claims from those awarded for violations of the Chip Act—upon which Brooktree's motion for prejudgment interest was denied. The court also instructed both parties to submit supplemental briefs concerning the rate of interest at which these damages should be calculated and whether that interest should be calculated at a simple or compound rate. This court also requested supplemental briefing on the issues of whether a stay of execution should be issued without requiring AMD to post a supersedeas bond; and whether the language of the injunction issued by this court on September 27, 1990, should be modified now that the proceedings before this court have been concluded.

PREJUDGMENT INTEREST

Brooktree has asked this court to award prejudgment interest for damages from AMD's infringement of Brooktree's patents under § 284 of the federal patent laws. 35 U.S.C. § 284. Prejudgment interest is a proper element of damages in a patent infringement suit under 35 U.S.C. § 284, and should generally be awarded to a successful plaintiff absent some justification. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656–657, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983). However, even though Brooktree is entitled to prejudgment interest under the patent statute, it can only recover such interest if it can segregate the damage award between the patent and mask work damages with sufficient certainty.

Brooktree has filed a second Declaration of Robert Wallace, Brooktree's damages expert, in conjunction with its supplemental brief in support of an award of prejudgment interest. This Declaration does segregate those damages attributable to the patent claims with sufficient certainty to allow this court to make such an award. The only question that remains is the interest rate upon which that award should be based, and whether the interest should be calculated on a simple or compound basis.

Brooktree argues that the award should be calculated at either 20%—which according to Brooktree represents its "lost rate of

return on investment"—or 10%—the prevailing prime rate during the relevant period. Brooktree further argues that this rate should be compounded quarterly.

AMD, for its part, contends that the California statutory rate of 7% should be used to calculate the prejudgment interest award, and that this rate should not be compounded.

## ANALYSIS

The trial court has discretion to determine the rate of prejudgment interest to be awarded in patent infringement cases. *Lam v. Johns–Manville Corporation*, 718 F.2d 1056, 1066 (Fed.Cir.1983). The focus of the prejudgment interest inquiry is on the adequate compensation of the aggrieved party. *Koehler v. Pulvers*, 614 F.Supp. 829, 850 (S.D.Cal.1985). Further, the district court may award interest at a rate above the statutory rate where the claimant has affirmatively demonstrated that a higher rate should be used. *Lam* at 1066.

Brooktree's request for a rate of 20% based upon its "lost rate of return on investment" is on its face too speculative to be granted. The figure is based solely upon the testimony of Brooktree's own expert, and assumes that the "lost profits" would have been reinvested into the firm and would have earned the same rate of return as other funds invested in the firm. Further, Brooktree has not pointed to any case law in which such a rate has been approved.

In addition, Brooktree has not made an affirmative showing that the interest award should be calculated at a rate above the California statutory rate of 7%. According to the Federal Circuit Court, the claimant has the burden to affirmatively demonstrate that an award above the statutory rate should be granted. *Lam* at 1066. While it is true that the state statutory rate is not controlling in the context of a suit based on a federal claim, *Koehler* at 850, courts do often use the statutory rate in the state in which they sit to calculate an award of prejudgment interest. *See e.g., Gyromat Corp. v. Champion Spark Plug*

*Co.*, 735 F.2d 549, 551, 557 (Fed.Cir.1984). In addition, courts in other jurisdictions have held that an award based upon the prime rate is not appropriate unless the claimant was actually forced to borrow money at that rate. *See, e.g., TWM Manufacturing Co. v. Dura Corp.*, 231 U.S.P.Q. 525, 533 (E.D.Mich.1986). Since Brooktree has made no showing that it was forced to borrow at or above the prime rate, and has in fact given no reason why a higher rate should be used, Brooktree's claim for prejudgment interest on its patent claims shall be calculated at the California statutory rate of 7%. Further, in accordance with the Federal Circuit's reading of the legislative history of the prejudgment interest statute, *See Gyromat* at 557, the award will be calculated at a simple, rather than compound, rate of interest. Such a calculation yields the figure of $744,600.

## STAY PENDING APPEAL

AMD has moved for a stay of the money judgment pending appeal. AMD has asked this court to issue that stay without requiring the posting of a supersedeas bond. AMD argues that since it is a well-established company, with a net worth of more than 20 times the amount of the judgment, there is virtually no risk that it will not be able to satisfy that judgment should the jury's verdict be affirmed on appeal.

In the alternative, AMD asks this court to exercise its discretion and allow it to post real property as security as opposed to a supersedeas bond. In making this request, AMD notes that a supersedeas bond in the amount required would cost AMD approximately $750,000.

Brooktree opposes the granting of a stay without requiring AMD to post a supersedeas bond. To support its position, Brooktree points to the large amount of the award, as well as the volatile nature of the computer industry. Brooktree argues that these factors raise the possibility that AMD might not be able to satisfy the judgment by the time the case has gone through the appeal process. Brooktree also notes that while this court has discretion to waive the bond requirement, as a

general rule such a requirement is imposed absent some unusual countervailing consideration.

## ANALYSIS

 Federal Rule of Civil Procedure 62(d) states that a judgment debtor is entitled as a matter of right to a stay of the execution of a money judgment pending appeal upon the posting of a supersedeas bond. In addition, the trial court may, at its discretion, either waive the bond requirement or allow the judgment debtor to use some alternative type of security. *Olympia Equipment v. Western Union Telegraph Co.*, 786 F.2d 794 (7th Cir.1986); *In re Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir.1977). Moreover, the court's determinations of such issues will not be reversed on appeal unless there is an abuse of discretion. 7 *Moore's Federal Practice* ¶ 62.06 at 62–32, 33.

In *Olympia Equipment*, the Seventh Circuit listed two circumstances where wavier of the bond requirement is appropriate: 1) "where defendant's ability to pay is so plain that the cost of the bond would be a waste of money;" and 2) "where the requirement would put the defendant's other creditors in undue jeopardy." 786 F.2d at 796. In *Federal Prescription Service v. American Pharmaceutical Association*, 636 F.2d 755 (D.C.Cir.1980), the D.C. Court of Appeals affirmed the trial court's decision to waive the posting of a supersedeas bond, noting that the judgment debtor had a net worth of more than 47 times the amount of the judgment.

The circumstances in this case are not so clear as those in either *Olympia Equipment* or *Federal Prescription*. In *Olympia Equipment* the defendant's financial situation was such that the fee for a supersedeas bond would probably have forced the defendant into bankruptcy. In *Federal Prescription*, not only was the judgment/net worth ratio almost twice what it is in this case, but the total dollar figure, $102,000, was considerably less.

However, the defendant has made a good case for waiving the requirement of a supersedeas bond. Even taking into account the inherently volatile nature of the computer industry, there is little chance that AMD will suffer business reversals during the appeal period so severe that it will be unable to satisfy the award. It seems unreasonable to require AMD to pay the $750,000 that such a bond would cost based upon this rather remote possibility. On the other hand, AMD has spent several years pursuing this lawsuit, and is entitled to assurances that the victory it has gained will not be jeopardized by the whims of the computer industry, or future ill-advised business decisions by AMD's management. Put simply, Brooktree has the right to ask for more concrete assurances that its judgment will be collectable after this case has gone through the appeal process than the current financial strength of AMD.

Based upon these countervailing considerations, this court will grant a stay of execution without requiring AMD to post a supersedeas bond, but will require AMD to provide real property security in an appropriate amount to protect Brooktree's interest. This solution will provide greater protection for Brooktree while at the same time allowing AMD to avoid the substantial cost of obtaining a supersedeas bond.

 The final question is the value of the property AMD should be required to post as security. In this regard, Brooktree notes that under California law, the execution of a money judgment can be stayed based upon security other than a surety bond only if that security has a value twice the amount of the judgment. California Code of Civil Procedure § 917.1(b). Without holding, as AMD suggests, that this court is bound to follow California law on this point, this court feels that requiring AMD to provide real property with a value of twice the amount of the judgment is appropriate. Real property values are subject to substantial variation, and AMD has not pointed to any serious hardship that such a requirement would impose. Accordingly, AMD's request to stay the execution of this judgment without the posting of a supersedeas bond is granted. However, AMD will be required to post real property

security with a value of twice the amount of the judgment.

## MODIFICATION OF INJUNCTION

Finally, Brooktree has requested a modification of the injunction that was entered by this court on September 27, 1990. Specifically, Brooktree has asked that the nature of the injunction be changed from interlocutory to permanent now that AMD's post-trial motions have been denied; and also that the language of the injunction be modified so as to cover the infringing circuitry contained in the computer chips as well as the chips themselves. AMD does not dispute this point, and has submitted a proposed injunction order that it argues addresses Brooktree's concerns. Brooktree has also submitted a proposed order.

Both sides agree that the language of the injunction should be changed to prohibit AMD from making, using, selling, actively inducing the manufacture or sale of, or contributing to the manufacture or sale of, the *circuitry* that was found to infringe Brooktree's patents, rather than the particular chips that contained that circuitry. The major difference between the two proposed orders is the narrowness with which the infringing products are defined. Brooktree's proposed order would prohibit the making, using, selling, etc., of *any chips containing circuitry found to infringe* Brooktree's patent claims; or the making, selling, etc., of *any chips containing the mask work layout* found to infringe Brooktree's mask work rights. The language of AMD's proposed order covers only *color palette chips* containing *the identical* circuitry as that found to infringe Brooktree's patents; or the importing, distributing, inducing or knowingly causing another to import or distribute, any *semiconductor chip products* containing the mask work layout *of the static RAM cells* found to have infringed Brooktree's mask work rights.

The proposed order submitted by Brooktree makes those changes necessary to cover the infringing circuitry itself. AMD has made no argument as to why the additional changes it recommends should be adopted.

Specifically, AMD does not explain why only "color palette chips" containing the infringing circuitry should be included in the injunction. This may be the only current use of the circuitry, but there does not seem to be any reason to include this limiting language in the injunction. The circuitry itself was found to infringe Brooktree's patents, not its use in the color palette chips. In addition, AMD has not explained why the language of the injunction as to the mask works should be changed from "making, using, selling," etc., to "importing, distributing," etc. The language from the original injunction was taken from AMD's proposed order, and there does not seem to be any reason to change it now.

In sum, while there is not much difference between the two proposed orders, Brooktree's comes the closest to the language of the original interlocutory injunction already issued by this court. AMD has not explained why the additional changes contained in its proposed order should be adopted. Accordingly, Brooktree's proposed order for a permanent injunction will be adopted.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby:

I. Awards Brooktree prejudgment interest for damages on its patent infringement claims in the amount of $744,600.

II. Issues a stay of the execution of judgment conditioned upon AMD's posting of real property security with a value twice the amount of the jury award.

III. Adopts the language contained in Brooktree's proposed order and issues a permanent injunction containing that language.