**Joel CIPES, d/b/a Joel Cipes Photography, Plaintiff,**

v.

**MIKASA, INC., Defendant.**

No. CIV.A. 02–12370NMG.

United States District Court, D. Massachusetts.

Nov. 14, 2005.

Andrew D. Epstein, Barker, Epstein & Loscocco, Boston, MA, Matthew K. Ryan, Frommer Lawrence & Haug, New York City, for Plaintiff.

Leslie C. Allen, Frommer Lawrence & Haug, LLP, Leonard J. Santisi, Frommer Lawrence & Haug LLP, San Diego, CA, Howard J. Susser, Burns & Levinson, Merton E. Thompson, Burns & Levinson LLP, Daniel B. Trinkle, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

### I. Background

After a five-day jury trial, a unanimous jury awarded the plaintiff, Joel Cipes d/b/a Joel Cipes Photography ("Cipes"), $665,000 on a copyright infringement claim against the defendant, Mikasa, Inc. ("Mikasa"). The jury also found that Mikasa and Cipes had entered into an enforceable contract for the use of Cipes's photographs but concluded that Mikasa had not breached that contract.

Following the adverse verdict, Mikasa moved this Court for judgment as a matter of law or, in the alternative, for a new trial. Cipes moved to amend the judgment to add prejudgment interest and costs, and for injunctive relief.

On July 8, 2005, this Court 1) denied Mikasa's motion for judgment as a matter or law or, in the alternative, for a new trial, 2) allowed Cipes's motion to amend the judgment to add prejudgment interest and 3) allowed Cipes's motion to compel the return of his photographs from Mikasa and to enjoin their future use by Mikasa. A permanent injunction, entered on the same date, included an order that Mikasa file a verified statement of compliance within 45 days. Mikasa filed a notice of appeal on August 8, 2005. It also requested, and was granted, a one-month extension of time to file its verified statement of compliance.

Post-trial disputes between the parties persist in the form of the following pending motions:

1) Mikasa's motion to stay the money judgment pending appeal and for a waiver of the supersedeas bond, or, in the alternative, for approval of a bond if no waiver is granted (Docket No. 154);

2) Mikasa's motion for an order requiring that Cipes preserve photographs of Mikasa's products (Docket No. 160);

3) Cipes's motion to hold Mikasa in contempt of court (Docket No. 164);

4) Cipes's motion for leave to file a reply to Mikasa's opposition to the contempt motion (Docket No. 172); and

5) Cipes's motion for a hearing on the contempt motion (Docket No. 177).

II. Analysis

### A. Stay of Money Judgment and Waiver of Supersedeas Bond

Fed.R.Civ.P. 62(d) allows an appellant to obtain a stay of a monetary judgment against it by posting a supersedeas bond. Under Local Rule 62.2,

A supersedeas bond staying execution of a money judgment shall be in the amount of the judgment plus ten (10%) percent of the amount to cover interest and any award of damages for delay plus Five Hundred and no/100 ($500.00) Dollars to cover costs, unless the court directs otherwise.

Based on a plain reading of Fed.R.Civ.P. 62(d) and related First Circuit cases, the posting of a supersedeas bond in the amount specified by Local Rule 62.2 results in an automatic stay of the execution of a money judgment. *See, e.g., Acevedo–Garcia v. Vera–Monroig*, 296 F.3d 13, 17 (1st Cir.2002). Thus, under the applicable rules, Mikasa will be permitted to post a bond in the amount of approximately $925,000 to stay execution of the judgment. That amount is determined by adding pre-judgment interest plus 10% to the original judgment.

■ As suggested by the language of Local Rule 62.2, this Court has discretion to alter the supersedeas bond requirement. For example, in *Bowers v. Baystate Technologies, Inc.*, No. Civ. A. 91–40079, 2001 WL 640876 (D.Mass. June 5, 2001), this Court approved alternate security in lieu of the supersedeas bond after considering the substantial, but ultimately unavailing, effort that the appellant had made to comply with the $6 million supersedeas bond requirement.

The First Circuit Court of Appeals has not directly addressed the question of when a district court may allow a stay that is unsecured by a supersedeas bond. *See Trustmark Ins. Co. v. Gallucci*, 193 F.3d 558, 559 n. 1 (1st Cir.1999). Given that the bond requirement is explicitly described in both the federal and local rules, an appellant should, as a general matter, be obliged to satisfy it. *See, e.g., Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir.1986) (citing cases); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C.Cir.1980); *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir.1979).

The Seventh Circuit Court of Appeals has laid out five criteria that district courts in that circuit are to consider in making waiver decisions:

(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a

precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon v. City of Chicago,* 866 F.2d 902, 904–05 (7th Cir.1988) (citations omitted). That court has also indicated that the bond requirement is

> inappropriate in two sorts of case [sic]: where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and— the opposite case …—where the requirement would put the defendant's other creditors in undue jeopardy.

*Olympia Equip. Leasing Co. v. W. Union Telegraph Co.,* 786 F.2d 794, 796 (7th Cir. 1986).

■ In this case, Mikasa argues that the supersedeas bond requirement should be waived because it will clearly be able to satisfy the judgment following appeal. In fact, Mikasa's most recent financial statement indicates that it has a net worth of approximately $230 million.

Various documents show, however, that Mikasa's finances have been declining for several years. In his deposition testimony, Mikasa's former CFO, Matt Petrillo, reported that Mikasa's gross profits and net income had declined from 1999 to 2002 with a further decline expected for 2003. Furthermore, Mikasa's balance sheet in 2004 shows a significant decline in net worth and increase in operating losses. A recent Dun & Bradstreet report submitted by Cipes rates Mikasa as being moderately likely to suffer financial distress over the next 12 months and being highly likely to fail making payments on time over the next 12 months.

Based on the foregoing, Mikasa's ability to pay the judgment following appeal is not sufficiently guaranteed to warrant waiver of the supersedeas bond require- ment. Moreover, if Mikasa is as financial- ly secure as it assures the Court it is, its ability to obtain the bond will not be diffi- cult. Consequently, Mikasa's motion to waive the bond requirement will be denied.

## B. Preservation of Photographs

■ The permanent injunction entered by this Court required Mikasa, *inter alia,* to return to Cipes all photographs taken by him and to destroy all unauthorized copies of his photographs. With an appeal pending, Mikasa has moved this Court to restrain Cipes from 1) destroying or dam- aging original photographs or negatives, 2) selling or otherwise transferring those photographs or negatives to third parties and 3) making other commercial uses of the photographs. Mikasa argues that the appeal could ultimately reestablish its rights in the photographs. Moreover, it takes the position that, notwithstanding the judgment against it, the subject matter of the photographs is the intellectual prop- erty of Mikasa which gives it commercial rights to the photographs.

Cipes opposes Mikasa's motion, arguing, *inter alia,* that 1) he has a legal right to use the photographs even for commercial purposes, 2) Mikasa can seek appropriate legal remedies should Cipes infringe upon Mikasa's intellectual property rights in its products and 3) a court order restricting Cipes from using the photographs as he desires would be an unconstitutional "prior restraint".

Although Mikasa has not couched its motion in such terms, in essence, it seeks a modification of the permanent injunction pending appeal. *See* Fed.R.Civ.P. 62(c). Motions under Rule 62(c) are evaluated under the four-part *Hilton* test:

> (1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irrepa- rably harmed absent injunctive relief;

(3) whether issuance of the stay will injure other parties; and (4) where the public interest lies.

*Acevedo–Garcia,* 296 F.3d at 17 n. 3 (citing *Hilton v. Braunskill,* 481 U.S. 770, 776–77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). The criteria are, of course, almost identical to the preliminary injunction requirements. *See, e.g., Acevedo–Garcia,* 296 F.3d at 16–17.

In this case, consideration of the relevant factors weighs against modification of the permanent injunction. The potential irreparable harm caused by Cipes's use or destruction of the photographs does not outweigh Mikasa's modest chance of succeeding on appeal. Furthermore, this Court's decision whether or not to modify the injunction will have minimal effect, if any, on third parties or the public interest.

With respect to irreparable harm, if Cipes were to destroy the photographs, use them for commercial purposes or transfer them to a third party, Mikasa's appeal would not thereby become moot. *Cf. Buntzman v. Springfield Redevelopment Auth.,* 918 F.Supp. 29 (D.Mass.1996) (finding that the denial of a stay pending appeal of an eminent domain claim could result in the disposition of the property at issue, thereby mooting the appeal). Moreover, should Cipes's activities concerning the photographs infringe upon Mikasa's legal rights, it could recover monetary damages for the cost of replacing the photographs.

Nor has Mikasa made a strong showing that it will succeed in its appeal. Its notice of appeal indicates that Mikasa will challenge 1) the denial of its motions for summary judgment regarding the validity of Cipes's copyright registrations, 2) the jury decision, 3) the post-trial order denying judgment as a matter of law and Mikasa's motion for a new trial, 4) the permanent injunction and 5) the amended judgment.

In the first place, Mikasa's motion for an order requiring Cipes to preserve the photographs sets forth scant evidence in support of its likelihood of success on appeal. Its principal argument seems to be that, as the owner of the subject matter of the photographs, it holds certain intellectual property rights in the photographs themselves but it is unclear whether that legal argument was ever raised during the litigation.

This Court denied Mikasa's motions for summary judgment in an order entered November 4, 2004, on the grounds that the errors Cipes had concededly made in his federal copyright registrations did not render those registrations invalid. The Court concluded that the errors were inadvertent and immaterial to Mikasa. In light of the record and the controlling law reviewed by this Court in its consideration of the summary judgment motions, Mikasa has not made a strong showing that the decision was erroneous. Moreover, the jury verdict, which found that Cipes had validly registered the copyrights at issue, reinforces the Court's decision.

Likewise, Mikasa has made no cogent argument undermining the jury verdict or this Court's conclusion with respect to Mikasa's motions for judgment as a matter of law and a new trial. As explained fully in this Court's Memorandum and Order of July 8, 2005, the jury verdict as to both the copyright and contract claims was fully supported by the evidence.

█ Finally, Mikasa has offered no basis for its challenge of the permanent injunction entered by this Court. A finding of liability for copyright infringement, combined with the threat of future infringement, justifies the imposition of a permanent injunction. *See, e.g., Marvin*

*Music Co. v. BHC Ltd. P'ship,* 830 F.Supp. 651, 655 (D.Mass.1993).

## C. Contempt of Court

■ Cipes has moved this Court to hold Mikasa in contempt, contending that it has failed to comply with the terms of the permanent injunction. In particular, Cipes asserts that Mikasa has not "forthwith" returned photographs to him or removed them from its web site and print materials. Furthermore, Cipes has provided evidence that, as of the end of October, Mikasa and at least one of its third-party vendors were still using some of Cipes's photographs on their web sites.

As a remedy, Cipes requests that the Court award to him 1) actual damages and Mikasa's profits earned between the date of the jury verdict and the date that the photographs are removed from all web sites, 2) statutory damages pursuant to 17 U.S.C. §§ 504(c)(1) or (c)(2), or 3) such other amount as the court deems just. Cipes has also requested that the Court require Mikasa to pay his costs and reasonable attorney's fees.

Mikasa opposes Cipes's motion on the grounds that it has substantially complied with the permanent injunction and that any noncompliance was neither willful nor the result of anything other than impossibility of performance. Mikasa has more recently indicated that it has unintentionally failed to comply with the injunction with respect to only 17 photographs.

■ A complainant alleging civil contempt must prove it by "clear and convincing evidence". *AccuSoft Corp. v. Palo,* 237 F.3d 31, 47 (1st Cir.2001) (citations omitted). Contempt may be found only where the order allegedly violated is "clear and unambiguous". *Id.* (citation omitted). Ambiguities are to be resolved in favor of the alleged contemnor. *Id.* While good faith compliance does not wholly insulate a party from a finding of contempt, First Circuit precedents "permit[ ] a finding of contempt to be averted where diligent efforts result in substantial compliance with the underlying order". *Id.* The determination of whether substantial compliance has been made is a contextual one, "depending[ing] on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest". *Id.* (citation and internal quotation marks omitted).

Upon consideration of the facts of this matter, the Court finds insufficient evidence of contempt. Mikasa's noncompliance with the permanent injunction is relatively minor and not so egregious as to merit an order of contempt at this time. The Court forewarns Mikasa, however, that any further procrastination or deliberate failure to comply with the terms of the injunction will result in the imposition of sanctions.

### ORDER

In accordance with the foregoing:

1) Defendant's Motion to Stay Money Judgment Pending Appeal and for Waiver of Supersedeas Bond (Docket No. 154) is **DENIED**, provided however that a stay of the money judgment will be allowed upon the posting by the defendant of the required supersedeas bond;

2) Defendant's Motion for an Order to Preserve Photographs (Docket No. 160) is **DENIED**;

3) Plaintiff's Motion to Hold Defendant in Contempt of Court (Docket No. 164) is **DENIED**;

4) Plaintiff's Motion for Leave to File Reply to Mikasa's Response to Motion for Contempt (Docket No. 172) is **ALLOWED**; and

5) Plaintiff's Request for Oral Argument with Respect to his Motion for Contempt (Docket No. 177) is **DENIED,** as moot.

**So ordered.**