**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

LADY BENJAMIN PD CANNON
f/k/a Ben Cannon,

           Plaintiff,

           v.

ROMEO SYSTEMS, INC., a
Delaware Corporation, ROMEO
POWER, INC., a Delaware
Corporation, and MICHAEL
PATTERSON,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2021-0171-PAF

**ORDER ADDRESSING**
**DEFENDANT'S MOTION TO STAY PENDING APPEAL**

WHEREAS:[1]

    A.    Defendant Michael Patterson has moved to stay execution of the court's November 17, 2025 Judgment and Final Order (the "Final Order") pending appeal (the "Motion").[2]

---

[1] Unless otherwise defined herein, citations to the docket in this action are in the form of Dkt. [#].

[2] Dkts. 259, 271.

B. The Final Order entered post-trial judgment in favor of Lady Benjamin Cannon (the "Plaintiff") in the amount of $27,301,288.42, plus pre- and post-judgment interest.[3]

C. On December 18, 2025, Patterson filed a notice of appeal of the Final Order.[4]

D. In the Motion, Patterson offers 2,483,446 shares of Class A Common stock (the "Shares") of Battle Motors Holdings, Inc. ("Battle Motors"), a privately held corporation, as security for the stay.[5] Patterson asserts in the Motion that the value of the Shares is approximately $56.5 million. Patterson bases this valuation upon a sale of Battle Motors stock to existing investors in September 2025. Patterson maintains that the value of the Shares is more than sufficient to satisfy the judgment and to justify the Motion.

---

[3] Dkt. 271 at 4. On October 28, 2025, Patterson moved for a stay of execution of the judgment pending appeal and for an interim stay pending resolution of the motion to stay. Dkts. 260, 259. On December 12, 2025, Patterson filed an emergency motion to extend his deadline to respond to Cannon's discovery requests in aid of execution of the judgment. Dkt. 285. The court granted the motion on December 15. Dkt. 286. The practical effect of that ruling stayed execution on the judgment pending adjudication of this Motion. In any event, this Order renders the prior two motions moot.

[4] Dkt. 288.

[5] Battle Motors manufactures and sells garbage trucks. Dkt. 273 (Affidavit of Michael Patterson in Support of His Opening Brief in Support of His Motion for a Stay Pending Appeal, hereinafter "Patterson Original Aff.") ¶ 4; Dkt. 273 ("Def.'s Opening Br.") at 3. The company's origins date back to 1947, when it was known as Crane Carrier Company. Patterson Original Aff. ¶ 4. Defendant is the Chairman of the Board and Chief Executive Officer of Battle Motors, positions that he has held since mid-2021, when Battle Motors acquired the company. *Id*. ¶¶ 1−4.

NOW, THEREFORE, the court having carefully considered the Motion, IT IS HEREBY ORDERED, this 31st day of December, 2025, as follows:

1.  Article IV, Section 24 of the Constitution of the State of Delaware and Supreme Court Rule 32 govern stays pending appeal and the required security. Ct. Ch. R. 62(d). Article IV, Section 24 of the Delaware Constitution provides that there "shall be no stay of proceedings in the court below unless the appellant shall give sufficient security to be approved by the court below or by a judge of the Supreme Court." Whether to grant a stay of a judgment pending appeal is a matter of this court's discretion. Supr. Ct. R. 32(a).

2.  Prior to 1987, "courts in this state required appellants seeking to stay the execution of a judgment to post a supersedeas bond in an amount equal to the judgment." *Zimmerman v. Crothall*, 2014 WL 257461, at *1 (Del. Ch. Jan. 23, 2014) (citing *Blackwell v. Sidwell*, 126 A.2d 237 (Del. 1956)). In 1987, the Supreme Court substantially revised the rule governing stays pending appeal. The operative rule provides, in pertinent part:

> *Supersedeas bond or other security.* A stay or injunction pending appeal shall be granted upon filing and approval of sufficient security. . . . The type, amount, and form of the security shall be determined in the first instance by the trial court, . . .
>
> > (i) *Type of security.* Security for a stay . . . pending appeal shall be a supersedeas bond or other security. The trial court shall have the discretion to set a type of security other than a supersedeas bond, with the party seeking such

3

other type of security having the burden to demonstrate the sufficiency of such other type of security.

(ii) *Amount of security*. With regard to a judgment or a portion of a judgment for a sum of money, the security shall ordinarily equal such sum of money and all costs and damages, including damages for delay. The trial court shall have the discretion to set the security at a lesser amount, with the party seeking the stay . . . pending appeal having the burden to show that a lesser amount is sufficient in the circumstances.

Supr. Ct. R. 32(c).

3. Thus, under Supreme Court Rule 32(c), "a supersedeas bond is one type of security, but it is not the only type." *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2017 WL 11825097, at *2 (Del. Ch. Feb. 16, 2017).

4. Defendant does not wish to obtain a supersedeas bond because he avers that it will cost him between $800,000 and $1,600,000, and he doubts that he could recover that cost from Plaintiff if he prevails on appeal.[6] Instead, he offers to post illiquid shares of Battle Motors stock, which would allow him to avoid paying a bonding agent.

5. Defendant cites no case from a Delaware court allowing a judgment debtor to post stock in a private company as security for a stay of a multi-million-

---

[6] Patterson Original Aff. ¶ 28−30. Defendant's affidavit states that he "contacted three insurance companies regarding the possibility of securing a supersedeas bond" and that he "understand[s] from these communications and others that a supersedeas bond would cost me between $800,000 and $1,600,000." *Id*. ¶ 27−28. The Motion and supporting papers offer no other information concerning these communications.

dollar money judgment pending appeal. Nevertheless, he insists that the Shares are sufficient security to support a stay of execution. The court concludes that Defendant's offer of Battle Motors stock is insufficient security for a stay.

6. Defendant's Motion and supporting papers lack sufficient credibility to warrant a stay under these circumstances. First, Defendant's Motion and his supporting affidavit stated that he owned 42.11% of Battle Motors's fully diluted stock in a trust over which he and his spouse serve as trustees. *See* Patterson Original Aff. ¶¶ 20-24; *see also* Def.'s Opening Br. 12 n.3 ("As of November 24, 2025, Patterson beneficially owns 12,353,913 shares, or approximately 42.11% of Battle Motors Holdings, Inc. on a fully diluted basis."). But the supporting affidavit and capitalization table state that there are 32,264,353 outstanding shares on a fully diluted basis. Patterson Original Aff. ¶ 23; *id.* Ex. B. Based upon these figures, Defendant beneficially owned 38.29% of Battle Motors stock on a fully diluted basis, not 42.11%.[7]

---

[7] Defendant averred that he is the beneficial owner of a total of 12,353,913 shares of Battle Motors Class A and Class B common stock through the trust. *Id.* ¶¶ 21−22; *see also id.* Ex. B (Battle Motors Capitalization Table as of Oct. 15, 2025). To be sure, the capitalization table submitted with Defendant's original affidavit reflects 32,264,353 fully diluted shares and states in boldface type that "Patterson Owns approximately 42.11% of Battle 12,353,913 Shares." *Id.* Ex. B. This exhibit also reflects $162,025,000 in convertible promissory notes, which are not accounted for in the number of fully diluted shares.

7. Second, the Patterson Original Affidavit averred: "In September of this year, [Battle Motors] sold 1,406,593 shares of its Class A Common stock to existing Battle Motors stockholders at $22.75 per share, implying a pre-money valuation of Battle Motors of $675 million and a post-money valuation of $707 million." Patterson Original Aff. ¶ 26. Defendant now admits that his statement was false. In a Supplemental Affidavit of Michael Patterson in Support of His Reply Brief in Support of His Motion for Stay Pending Appeal ("Patterson New Affidavit"),[8] Defendant claims he "was mistaken." *Id.* ¶ 2. Instead, he now avers: "Between February and September 2025 Battle [Motors] sold 1,456,572 shares of Series A-1 Preferred stock, which is convertible into Class A Common stock on a one-for-one basis, and raised a total of approximately $33 million." *Id.* But even that statement seems to leave out important information. For example, a sale of 1,456,572 shares for a total of $33 million reflects a per share value of just under $22.66, not $22.75.

8. The Patterson New Affidavit also leaves out critical information about the Series A-1 Preferred Stock sales in 2025. Exhibit D to the Patterson Original Affidavit contains the audited financial statements of Battle Motors for 2023 and 2024. The 2024 audited financials specifically note the following as to the Series A-1 Preferred Stock sales in early 2025:

---

[8] Dkt. 281.

6

During February to April 2025, [Battle Motors] entered into preferred stock agreements and raised a total of $13.0 million for the issuance of 569,663 of Series A-1 Preferred Stock and 284,835 Class A warrants with an exercise price to be determined upon an updated common stock valuation.

9. The audited financials indicate that the sales of Series A-1 Preferred Stock included a warrant to purchase Class A Common Stock at an exercise price to be determined later. Neither Defendant's affidavits nor his briefs mention the warrant portion of the stock sales. Nor does Defendant supply the terms of the Series A-1 Preferred Stock, the terms of the purchase agreements, the exercise price of the Class A Warrants, or the anticipated "updated common stock valuation" mentioned in the 2024 audited financial statements. These omissions cast further doubt on Defendant's assertions on the value of the Shares that he seeks to post as security for a stay pending appeal.

10. These are not the only issues that raise doubt as to the sufficiency of the Shares to serve as security for a stay. For example, the Shares are held in a trust for which Defendant and his spouse serve as trustees. The Motion papers do not identify the beneficiary or beneficiaries of the trust, the terms of the trust, or whether Defendant has unilateral authority to post those shares as security pending appeal.

11. In addition, on reply, Defendant abandoned his original proposal for the Shares to serve as security for the stay. On reply, Defendant now says that he is "willing to pledge all of my Series A-1 Preferred shares and the balance in Class A

7

Common stock." Patterson New Aff. ¶ 3. This is a marked change from the Motion, which only offered 2,483,446 shares of Battle Motors Class A Common stock held in the trust as security. Defendant has not provided any explanation for this change of tack, raised for the first time on reply, which Plaintiff had no opportunity to address in her answering brief. Therefore, the court can reject this new argument as untimely. *See Cedarview Opportunities Master Fund, L.P. v. Spanish Broad. Sys., Inc.*, 2018 WL 4057012, at *14 n.121 (Del. Ch. Aug. 27, 2018) ("[C]ourts routinely [] refuse[] to consider arguments made in reply briefs that go beyond responding to arguments raised in a preceding answering brief."). Beyond that, Defendant's amended motion and new proposal suffer from other flaws. For example, Defendant does not: (i) identify the number of shares of Series A-1 Preferred Stock that he beneficially owns or how the shares are held; (ii) supply the terms of the Series A-1 Preferred Stock; or (iii) offer sufficient support to value the Class A Common stock that he proposes to backstop the unidentified number of shares of Series A-1 Preferred Stock.

12. Defendant cites a handful of cases in which something less than a supersedeas bond was accepted to support a stay pending appeal. One is from Delaware, and all are inapposite.

13. In *In re Estate of Bernie P. Farren*, 2016 WL 4539988 (Del. Ch. Aug. 30, 2016) (ORDER), the court permitted the movant to post her life estate in

her personal residence, which was the residence at issue in the case and was otherwise subject to an order of sale. The court concluded that, because the movant's financial status made her otherwise "not capable of posting [a supersedeas] bond [therefore] [h]er life estate will have to suffice." *Id.* at \*1. Here, the Shares are not a part of the judgment awarded to Plaintiff, and they are not at issue at all in this case. Additionally, Defendant is capable of posting a supersedeas bond; he simply prefers not to incur the cost of obtaining one. *See* Patterson Original Aff. ¶ 29; *see* Dkt. 281 at 8 ("Patterson does not dispute that he has significant assets."). Similarly, in *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794 (7th Cir. 1986), the court permitted a corporate defendant to post a combination of cash, accounts receivables, and a security interest in its physical assets worth almost twice the judgment, in an antitrust action. The court did so because it was "reasonably clear that a bond could not have been obtained . . . and the alternatives facing the district judge were either to allow [the non-movant] to execute the judgment by seizing and selling unencumbered assets of [the movant], or to allow the posting of alternative security." *Id.* at 796–97. The appeals court reluctantly permitted the alternative security because no bond could be obtained for the $36 million judgment, and only $12 million of the judgment represented compensatory damages, with the rest being punitive damages. *Id.* at 797, 799. *Olympia Equipment*

9

did not involve the posting of stock in a private company, and, unlike that case, Defendant is capable of obtaining a supersedeas bond.

14. *Athridge v. Iglesias*, 464 F.Supp.2d 19 (D.D.C. 2006), is also easily distinguishable. The movants in *Athridge* sought to pledge residential and commercial real estate as security for a judgment while they continued to litigate with their insurance company to obtain a supersedeas bond. For expedience, the court permitted the movants to post their real estate in the District of Columbia after finding that the local real estate market was sufficiently stable and that the non-movant had only shown a slight decline in the residential market and none in the commercial market. *Id.* at 24. The court did, however, consider the possibility of a significant real estate market decline: "Even assuming a significant decline in residential [real estate] value, which would apply to less than half of the [total] real estate security provided by [movants], the value of [movants'] real estate holdings exceeds the amount of judgment awarded." *Id.* In fact, the residential value could have declined by almost half the amount, and the real estate holdings would still have met the amount of judgment awarded. *See id.* Defendant has made no similar showing of hardship in obtaining a supersedeas bond or in establishing that the Shares are sufficient security for a stay.

15. Lastly, Defendant cites two cases that permitted the movant to use stock of a publicly traded company as partial alternative security, in lieu of a supersedeas

10

bond for the full amount of the judgment. In *Ripka v. Philco Corp.*, 65 F.Supp. 21 (S.D.N.Y. 1945), the final judgment ordered recission of the stock sale and awarded attorneys' fees and costs to the prevailing party. *Id.* at 37. The court permitted the movant to secure the judgment with either (i) the stock at issue and a supersedeas bond in the amount of the attorneys' fees and costs or (ii) a supersedeas bond in the amount of the full value of the stock and attorneys' fees and costs. *Id.* at 39. Unlike in *Ripka*, the Shares are not a portion of the judgment awarded by this court, nor are the Shares publicly traded.

16. *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F.Supp. 501 (E.D. Pa. 1973) was an antitrust action in which the plaintiff sought to prevent the individual defendants and the corporate defendant from operating the same business as the plaintiff under a similar name. The court entered a monetary judgment that neither the individual defendants nor the corporate defendant could pay. In considering whether to accept something other than a supersedeas bond pending appeal, the court observed that "[e]xecution of the judgment would place [the corporate defendant] and each of the individual defendants in insolvency." *Id.* at 520–21. To avoid that harsh result, the court allowed the movants to post a combination of all of the stock in the corporate defendant, stock in the plaintiff's parent corporation, which the individual defendants held as a result of their prior employment at the plaintiff and plaintiff's parent, stock in various publicly traded

11

companies, and cash. *Id*. As further protection, the court's order prevented the corporate defendant from depleting the pledged assets or engaging in operations outside of the ordinary course, and permitted the prevailing party to select an independent auditor to inspect any and all records of the corporate defendant within two weeks following the end of each month. *Id.* at 521. *Sauter* was an unusual situation in which posting the entirety of the corporate defendant's stock did protect the plaintiff's interest in preventing the defendants from operating the business. It bears no resemblance to this case. Plaintiff's execution of the judgment would not render Defendant insolvent. Battle Motors is not a defendant in this case, and there is no persuasive evidence to suggest that Cannon's execution of the judgment would render Battle Motors insolvent. Moreover, Defendant offers no basis to suggest that this court could impose reporting requirements on Battle Motors—a non-party— akin to those ordered in *Sauter*.

17. "The primary purpose of the security, or supersedeas bond, is to protect the appellee from losing the benefit of the judgment through the delay or ultimate non-performance by the appellant." *DiSabatino v. Salicete*, 681 A.2d 1062, 1066 (Del. 1996) (citing *Ellis D. Taylor, Inc. v. Craft Builders, Inc.*, 260 A.2d 180, 182 (Del. Ch. 1969)).

18. The pledge of the Shares in place of a supersedeas bond would subject Plaintiff to all of the downside of the stock's volatility but none of the upside,

because Plaintiff's recovery is limited to the judgment amount, plus interest or the value of the bond, whichever is *lower*. Plaintiff bears the risk that the value of the stock could decline pending appeal. Battle Motors's stock is privately held. Thus, there is no liquid market for its stock, and Battle Motors is not required to disclose financial results or material changes in operations. Plaintiff would bear all of the risk of adverse changes in Battle Motors's financial condition or strategic corporate transactions that could materially dilute the value of the security. For example, Battle Motors could issue stock or debt that dilutes the value of the pledged Shares. Plaintiff is a judgment creditor of Defendant—not Battle Motors—and she has no ability to monitor the company, its transactions, or its financial statements during the pendency of the appeal.[9]

19. Plaintiff identifies other legitimate questions about the sufficiency of the Shares as security. For example, Battle Motors's recent audited financial statements indicate that it is operating at a net loss and has been for the past four years.[10] Defendant brushes these observations aside and states that "[a]ll of [his] prior companies operated [at a net loss per share during periods of high growth] for

---

[9] For example, Battle Motors has $150 million in principal convertible notes that are due in July 2026. *See* Def.'s Opening Br. Ex. D at F–16. The Motion does not address how conversion of the notes or the lender's decision to demand payment could affect Battle Motors or the value of the Shares.

[10] *Id.* Exs. C, D.

significant periods. Battle Motors is no exception." Patterson Original Aff. ¶ 19. Defendant's general assertion that his prior entities also showed annual net losses per share does not materially help his cause. It is Defendant's burden to show that the security he proposes is sufficient. Supr. Ct. R. 32(c)(i). On this record, he has not done so.

20. Defendant's pledge of Battle Motors's stock is not sufficient security to warrant a stay pending appeal. This failure alone could justify denial of the Motion. *See Morova LLC v. Gendreau*, 2025 WL 3034732, at *2 n.21 (Super. Ct. Oct. 30, 2025). Nevertheless, for completeness, the court next considers the factors that traditionally guide this court's discretion in considering a stay pending appeal. *See Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356 (Del. 1998).

21. Under *Kirpat*, this court applies a four-factor test when considering a request for a stay pending appeal. The court must consider: (1) "a preliminary assessment of likelihood of success on the merits of the appeal"; (2) "whether the petitioner will suffer irreparable injury if the stay is not granted"; (3) "whether any other interested party will suffer substantial harm if the stay is granted"; and (4) "whether the public interest will be harmed if the stay is granted." *Id*. at 357. "The factors are not to be considered in isolation, but as part of a balancing of 'all

14

of the equities involved in the case together.'" *Rivest v. Hauppauge Digit., Inc.*, 2023 WL 336374, at *1 (Del. Ch. Jan. 19, 2023) (quoting *Kirpat*, 741 A.2d at 358).

22. Because the first factor "directs the trial court to assess the strength of its own reasoning and judgment, 'the likelihood of success on appeal' prong cannot be interpreted literally or in a vacuum." *Zhou v. Deng*, 2022 WL 1617218, at *2 (Del. Ch. May 23, 2022). Instead, the court typically considers the remaining factors before "assessing whether the movant has presented a question that raises a fair ground for review by our Supreme Court." *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4890876, at *1 (Del. Ch. Oct. 20, 2021).

23. As to the second factor, Defendant argues that the Shares, which he values at approximately $56.5 million, are sufficient security pending appeal.[11] Defendant argues that if he were forced into a "fire-sale" of the Shares, it would have knock-on effects including: "(i) the inability to unwind those sales later, (ii) immediate adverse tax consequences, and (iii) potential harm to [Battle Motors's] hundreds of employees, customers, suppliers, and creditors."[12]

---

[11] Def.'s Opening Br. 17−21.

[12] *Id.* at 3, 12.

15

24.     Defendant's arguments are self-serving, largely unsupported, and unavailing.[13] This court is not requiring a fire-sale or any liquidation of Defendant's Battle Motors stock. Defendant acknowledges that he has other assets that could secure a bond, but he chooses not to place them at risk.[14] But even if Defendant's only asset was his illiquid Battle Motors stock, Defendant offers no persuasive reason why he could not use that stock to obtain a supersedeas bond.

25.     As to the third and fourth factors, Defendant argues that a stay would not harm Plaintiff and would prevent harm to the public.[15]

26.     Almost five years have passed since Plaintiff attempted to retrieve her warrant in Romeo Systems, Inc. from Defendant. To delay Plaintiff's long-fought recovery pending an uncertain appeal would continue to undermine her rights. *See Huntington Way Assocs., LLC v. RRI Assocs. LLC*, 2023 WL 5664115, at \*2 (Del. Ch. Sept. 1, 2023) (finding that continuing to require the appellee to wait to recover

---

[13] Defendant might not be able to "unwind" the sales but does not suggest he could not purchase replacement shares. Indeed, any argument to the contrary would undermine his argument that the Shares are sufficient security for Plaintiff that could be sold to satisfy the judgment. Although it is theoretically possible that Defendant could suffer tax consequences from the sale of Battle Motors stock held by the trust, Defendant has not submitted evidence to permit an assessment of those tax consequences as they specifically pertain to Defendant.

[14] Dkt. 281 at 8.

[15] Def.'s Opening Br.14−15.

16

the judgment after four years since the appellee attempted to exercise its contractual rights would substantially harm the appellee).

27. Defendant maintains that the proffered security will, at a minimum, protect Plaintiff from any harm and will actually benefit her.[16] This assertion falls flat. "[T]he four-part *Kirpat* test would collapse if [] security was reason enough to grant a stay. And posting a bond does not change the reality that further delay will harm [Plaintiff]; it merely guarantees that [Plaintiff] will recover if [Defendant] lose[s] on appeal." *Huntington Way*, 2023 WL 5664115, at *2.

28. As to the public interest, Defendant asserts that Battle Motors's employees, suppliers, and customers "could suffer" because Battle Motors stock sale could cause stock declines and investor concerns.[17] That argument is entirely speculative and does not help Defendant for several reasons. First, it assumes that the only assets available to satisfy the judgment are a portion of Defendant's shares of Battle Motors stock. As explained above, that is not so.[18] Second, Defendant ignores that there is no public market for Battle Motors stock. The lack of a public market means that Plaintiff would incur additional transaction costs associated with finding a buyer, along with the risk that the value of the stock could fall significantly

---

[16] Def.'s Opening Br. 14–15.

[17] Def.'s Opening Br. 15.

[18] Dkt. 281 at 8 ("Patterson does not dispute that he has significant assets.").

during the pendency of the appeal. Because there is no public market for the stock, neither the court nor Plaintiff has any ability to monitor the value of the 2,483,446 shares of Battle Motors stock during the pendency of the appeal. Third, based on the Patterson Original Affidavit, Defendant could satisfy the judgment by selling only a small percentage of his Battle Motors stock.

29. Returning to the first *Kirpat* factor. "When considering the appeal's likelihood of success on the merits, this [c]ourt is called upon not to second guess its decision, but to assess, as objectively as possible, whether the case presents a fair ground for litigation and more deliberative investigations." *Wynnefield P'rs Small Cap Value L.P. v. Niagara Corp.*, 2006 WL 2521434, at *1 (Del. Ch. Aug. 9, 2006) (citation modified).

30. This factor weighs in favor of the requested stay. Defendant correctly identifies some issues that may be presented on appeal which have not yet been addressed by our Supreme Court. Therefore, the first *Kirpat* factor—likelihood of success on the merits of the appeal—weighs in Defendant's favor.[19]

---

[19] *See* Def.'s Opening Br. 11. The court does not, however, agree that each of the issues that Defendant has identified as novel were fairly presented at trial. For example, whether "the pledge agreement's exculpation clause protects [Defendant], regardless of the adequacy of the collateral," was not fairly presented. *See* Dkt. 255 at 71–72 ("[Defendant] did not assert protection by the exculpation clause in the Pledge Agreement in the event that this court determined no security interest attached to the Warrant; therefore, this court treats this argument as waived.").

31. Lastly, even if the *Kirpat* factors weighed in favor of granting a stay, the security that Defendant has offered is not sufficient to protect Plaintiff's interest in the judgment and to support a stay pending appeal.

32. Accordingly, Defendant's Motion is denied.

*/s/ Paul A. Fioravanti, Jr.*
Vice Chancellor